592 A.2d 228

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RUTH PARKER, DEFENDANT-APPELLANT.

Argued February 26, 1991—Decided July 17, 1991.

*Dean Lynch* argued the cause for appellant.

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey; *Catherine A. Foddai* and *Chana Barron,* Deputy Attorney General, of counsel).

The opinion of the Court was delivered by

O'HERN, J.

Defendant contends that her conviction of official misconduct as a teacher should be reversed because the trial court's instructions did not ensure a unanimous jury verdict. She argues that because the indictment charged multiple instances of misconduct and the jury did not convict her of each of the specifically-charged acts of sexual assault and endangerment, the jurors may have reached a compromise verdict on the official-misconduct count, with some believing that she had committed certain of the acts charged and some believing that she had committed others of the acts charged, but none unanimously agreeing on the specific acts committed. Defendant also questions whether the actions attributed to her qualify as official misconduct.

We disagree with her contentions and affirm the conviction. We believe that the jury instructions adequately conveyed to the jury the requirement that it must unanimously agree beyond a reasonable doubt that defendant had engaged in specific conduct that violated the official-misconduct statute. We also believe that her actions could constitute official misconduct.

I

For the specifics of this case, we draw on the facts stated in defendant's brief to the Appellate Division.

On February 19, 1986, two school administrators entered and searched defendant's classroom at the Robert Fulton School in North Bergen. Defendant taught a class of perceptually-impaired children ranging in age from ten to twelve years. The administrators decided to search defendant's classroom in response to a parental complaint they had received about her. In the course of their search, the administrators discovered in defendant's closet a bottle of rum and an envelope containing sexually-explicit magazines. After the search and discovery, the administrators suspended defendant from teaching and conducted interviews with the students in her class.

Either in those interviews, before the grand jury, or at trial, various students testified that defendant had touched them or others in their "private parts." In addition, several of the young witnesses testified that defendant had shown them the sexually-explicit magazines that had been found in the classroom. They said that defendant would have them "draw on or cut out the private parts of people in the magazine, and sometimes make cutouts herself, to be pasted in a book." One student stated that defendant had brought the bottle of rum into the classroom and that students had tasted it while defendant was out. Various students testified that defendant had told them about her "wacky" friend who was a "lesbian"; another said that she had told them that she wanted to "sleep with" a school administrator. One student testified that defen-

dant had said that she wanted to marry and "do bad things" with the school administrator; another stated that defendant had said that she was "going out" with the administrator and wanted to marry two other male teachers; and yet another student could remember defendant saying only that she "liked" the administrator but added that defendant had told the class that "the gym teacher was a lesbian" and that "the art teacher was taking drugs." Others described bizarre disciplinary methods that included "being put in a box" and writing words and phrases one hundred times.

A grand jury indicted defendant, charging her with eleven counts of criminal conduct. It charged her with four counts of sexual assault through committing acts of sexual contact on individual students, one count of attempted sexual assault on another student, five counts of endangering the welfare of children, and one count of official misconduct, contrary to the provisions of *N.J.S.A.* 2C:30–2a, in that she had engaged "in a continuing course of conduct which sexually abused, humiliated and otherwise endangered the welfare of children while [she] had a legal duty to care for the children and had assumed responsibility for their care."

At trial, some students admitted that they had fabricated parts of the stories. One admitted that he had brought the bottle of rum into the classroom. Others testified that a student had brought in the magazines; others said that defendant had found the magazines on the floor. Some admitted testifying falsely before the grand jury about having witnessed sexual contact or otherwise having told the grand jury untrue stories. All in all, when the witnesses were subjected to cross-examination in the courtroom, they wavered in many specifics.

The jury convicted defendant of official misconduct but acquitted her of three counts of sexual assault. On the remaining counts, the jury was unable to reach a verdict.

The Appellate Division affirmed the conviction, but one member of the panel dissented, finding that the trial court's failure

to give the jury specific instructions that they all had to agree on the particular act that constituted official misconduct violated defendant's right to a unanimous jury verdict. Defendant appealed to us as of right. *R.* 2:2–1(a). We also granted defendant's petition for certification on the issue of whether the acts of wrongdoing alleged by the State in defendant's indictment constituted official misconduct under *N.J.S.A.* 2C:30–2a. 122 *N.J.* 381, 585 *A.*2d 385 (1990).

## II

Like the "reasonable doubt" standard that was found to be an indispensable element at all criminal trials in *In re Winship*, 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1072, 25 *L.Ed.*2d 368, 375 (1970), "the unanimous jury requirement 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.'" *United States v. Gipson*, 553 *F.*2d 453, 457 (5th Cir.1977) (quoting *In re Winship, supra*, 397 *U.S.* at 364, 90 *S.Ct.* at 1072, 25 *L.Ed.*2d at 375). Our Constitution presupposes a requirement of a unanimous jury verdict in criminal cases. *N.J. Const.* art. I, para. 9. Our Rules require that the "verdict shall be unanimous in all criminal actions." *R.* 1:8–9. Although the requirement of unanimity is self-evident, the meaning of the expression "facts in issue" is not as clear. *See Schad v. Arizona*, —— *U.S.* ——, ——, 111 *S.Ct.* 2491, 2497, 115 *L.Ed.*2d 555, 565 (1991) ("Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." (quoting *McKoy v. North Carolina*, 494 *U.S.* 433, 449, 110 *S.Ct.* 1227, 1237, 108 *L.Ed.*2d 369, 385 (1990) (Blackmun, J., concurring))). For example, the court in *United States v. Peterson*, 768 *F.*2d 64 (2d Cir.), *cert. denied*, 474 *U.S.* 923, 106 *S.Ct.* 257, 88 *L.Ed.*2d 264 (1985), found that a jury does not have to agree unanimously on whether an actor's criminal role is that of a principal or an accomplice. *See also United States v. Horton*, 921 *F.*2d 540, 546 (4th Cir.1990) ("The jury found Horton guilty of one crime—first degree murder. The fact that the jurors may have

taken different routes [viewing Horton as accomplice or as principal] to this conclusion provides no grounds to reverse."), *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 2860, 115 *L.Ed.*2d 1027 (1991). State jurisdictions have reached the same conclusion: in a case involving possible accessory liability, the jury should be regarded as unanimous even if some jurors believe that the defendant was an aider or an abettor, while other jurors believe that the defendant was a principal. *See, e.g., State v. Smith,* 212 *Conn.* 593, 563 *A.*2d 671 (1989). In those cases each juror has found the defendant guilty of the substantive crime whether it be as a principal or as an accessory. Although all jurors may not find the same facts, the facts that they find are not "conceptually distinct." *See State v. Johnson,* 46 *Ohio St.*3d 96, 105, 545 *N.E.*2d 636, 645 (1989) (where "the alternatives presented to the jury and charged in the specifications were not conceptually distinct * * * a 'patchwork' or less than unanimous verdict was not possible"), *cert. denied,* —— *U.S.* ——, 110 *S.Ct.* 1504, 108 *L.Ed.*2d 639 (1990).

Another example of non-unanimity on facts arises in cases involving continuing courses of criminal conduct. In the case of sexual misconduct, young children are often unable to testify with respect to any specific date on which sexual contact had occurred. Rather, they will describe such events as having occurred over a period of time. Yet, as the court held in *State v. Altgilbers,* 109 *N.M.* 453, 786 *P.*2d 680 (Ct.App.1989), if the evidence could convince a reasonable person beyond a reasonable doubt that the defendant committed the charged offense during the span of time, "[n]o juror need have a precise day in his or her own mind in order to vote for conviction." *Id.* at 471, 786 *P.*2d at 698; *see also* Note, *Right to Jury Unanimity on Material Fact Issues: United States v. Gipson,* 91 *Harv.L.Rev.* 499, 502 (1977) ("only common sense and intuition can define the specificity with which the jury must describe the defendant's conduct before it may convict").

Some jurisdictions are of the view that unanimity is not required when a statute states a single offense but provides for

various modes of commission of the offense. For example, Maryland's consolidated theft statute, which groups the various aspects of stealing goods and of receiving stolen goods into a single offense, does not require jury unanimity on which specific aspect of the offense occurred. *Rice v. State,* 311 *Md.* 116, 532 *A.*2d 1357 (1987); *see also United States v. MMR Corp. (LA),* 907 *F.*2d 489 (5th Cir.1990) (because indictment charged defendants with joining conspiracy involving only one bid-rigging agreement, government did not have to prove precise obligations of each conspirator under the agreement, *e.g.,* high bid or no bid, but only that defendants did agree to join in the conspiracy; thus, general unanimity instruction was sufficient), *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 1388, 113 *L.Ed.*2d 445 (1991); *United States v. UCO Oil Co.,* 546 *F.*2d 833 (9th Cir.1976) (jury unanimity on specifics not required in conviction for making false statements and concealing material fact by trick, scheme, or device in relation to gasoline service-station business), *cert. denied,* 430 *U.S.* 966, 97 *S.Ct.* 1646, 52 *L.Ed.*2d 357 (1977). *See generally* Annotation, *Requirement of Jury Unanimity as to Mode of Committing Crime under Statute Setting Forth the Various Modes by which Offense May Be Committed,* 75 *A.L.R.*4th 91 (1990).

In some circumstances, however, a general charge on jury unanimity will not suffice. That is so when, for example, "a single crime can be proven by different theories based on different acts and at least two of these theories rely on different evidence, and [when] the circumstances demonstrate a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory." *People v. Melendez,* 224 *Cal. App.*3d 1420, 1433–34, 274 *Cal.Rptr.* 599, 608 (1990). The leading case for that proposition is *United States v. Gipson, supra,* 553 *F.*2d 453. There, the government presented a case of improper disposal of automobiles based on what the appeals court viewed as "two distinct conceptual groupings," the housing and the marketing of stolen vehicles. *Id.* at 458. Reason-

ing that some jurors might have concluded that Gipson had committed acts in the first grouping while others concluded that he had committed acts in the second grouping, the court held that the possibility of "significant disagreement among the jurors as to what he did" barred his conviction. *Id.* at 458–59; *see also United States v. Payseno,* 782 *F.*2d 832, 836 (9th Cir.1986) (" '[When] there is *a genuine possibility of jury confusion* or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice.' " (quoting *United States v. Echeverry,* 719 *F.*2d 974, 975 (9th Cir.1983))). Obviously, use of the expression "distinct conceptual groupings" is more of a conclusion than a predicate to decision. *Schad v. Arizona, supra,* —— *U.S.* at ——, 111 *S.Ct.* at 2498, 115 *L.Ed.*2d at 567. In *Gipson,* as in many such cases, there was a tangible indication of jury confusion: the jury requested additional instructions on the issue, but the trial court instructed the jury that it need not be unanimous on the basis for guilt. Thus, the circumstances in which a general charge on jury unanimity will not suffice may include

where the facts are exceptionally complex, *see Payseno,* 782 *F.*2d at 836– 37, or where the allegations in a single count are either contradictory or only marginally related to one another, *id.,* or where there is a variance between the indictment and the proof at trial, *United States v. Echeverry,* 698 *F.*2d 375, 377, *modified,* 719 *F.*2d 974 (9th Cir.1983), *United States v. Mastelotto,* 717 *F.*2d 1238, 1250 (9th Cir.1983), or where there is a tangible indication of jury confusion. *Echeverry,* 698 *F.*2d at 376–77. In these instances, the trial court must give an augmented unanimity instruction. [*United States v. Ryan,* 828 *F.*2d 1010, 1020 (3d Cir.1987).]

The celebrated case of Oliver North highlights this issue. *United States v. North,* 910 *F.*2d 843 (D.C.Cir.) (*North I*), *vacated in part and rev'd in part on rehearing,* 920 *F.*2d 940 (D.C.Cir.1990) (*North II*), *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 2235, 114 *L.Ed.*2d 477 (1991), and *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 2235, 114 *L.Ed.*2d 477 (1991). North had requested specific unanimity instructions from the trial court and had objected to the trial court's refusal to give such instructions. On appeal, North claimed that the circumstances of the case

indicated a high possibility of a "patchwork verdict" in that the case against him embraced in one count a broad-based charge of destroying, altering, or removing official documents from mid- to late November 1986. Because each of the charged document groupings was conceptually distinct (*e.g.*, a ledger of the Contra operating fund, documents concerning Iranian arms sales, documents removed but returned to his National Security Council office), and North's culpable mental state concerning each was in issue (did he know that it was a crime to remove or alter or shred each of the documents?), the circuit court initially concluded that North's request for a specific unanimity charge should have been granted and that the failure to give the charge constituted reversible error. Following the Independent Counsel's petition for rehearing, the circuit court noted that the trial court had limited the jury's consideration to "a single incident involving five specific documents." *North II, supra,* 920 *F.*2d at 951. In reviewing once again the jury instructions, the court found that the instructions "as a whole did not pose 'a genuine risk that the jury [would be] confused' " and concluded that the omission of a specific unanimity instruction did not constitute reversible error. *Ibid.* (quoting *United States v. Duncan,* 850 *F.*2d 1104, 1114 (6th Cir.1988), *cert. denied,* — *U.S.* ——, 110 *S.Ct.* 732, 107 *L.Ed.*2d 751 (1990)).

■ Concerning the need for a specific unanimity instruction, we agree with the proposition stated in *North I* that is generally applied in the federal system: "in cases where there is a danger of a fragmented verdict the trial court must upon request offer a specific unanimity instruction." *North I, supra,* 910 *F.*2d at 875; *accord United States v. Ryan, supra,* 828 *F.*2d 1010; *United States v. Mangieri,* 694 *F.*2d 1270 (D.C.Cir.1982).

### III

■ Although such a charge should be granted on request, in the absence of a specific request, the failure so to charge does not necessarily constitute reversible error.

Many federal courts have concluded that absent a specific request, "a general instruction on the requirement of unanimity suffices to instruct the jury they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." *United States v. Natelli*, 527 *F*.2d 311, 325 (2d Cir.1975), *cert. denied*, 425 *U.S.* 934, 96 *S.Ct.* 1663, 48 *L.Ed.*2d 175 (1976); *see also United States v. Bedonie*, 913 *F*.2d 782, 792 (10th Cir.1990) (absent specific request, general instruction was sufficient); *United States v. Beros*, 833 *F*.2d 455, 462–63 (3d Cir.1987) (failure to give specific unanimity instruction on defendant's request constituted abuse of discretion and required reversal); *United States v. Ryan, supra*, 828 *F*.2d at 1020 ("prudence counsels the trial court to give an augmented unanimity instruction if the defendant requests such a charge"). The circumstances of the case before us suggest a paraphrase of the holding in *United States v. Mangieri, supra*, 694 *F*.2d 1270:

[Our jurisdiction], along with others, has not heretofore adopted a rule requiring the particularized instruction. [Defendants'] trial counsel * * * failed to object to the instruction * * *. In the context of that entire charge and the whole trial, we must conclude that a conscientious juror would have understood that he [or she] must agree with the other jurors [as to the specifications they find to be the predicate of the guilty verdict]. [*Id.* at 1281.]

■ For in the last analysis, when we review the issue as a matter of plain error, the question is whether the instructions were clearly capable of producing an unjust result. *See R.* 2:10–2. This is not a case in which a court incorrectly stated general principles. The "jury instructions cannot be read as sanctioning a nonunanimous verdict." *State v. Jennings*, 216 *Conn.* 647, 663, 583 *A.*2d 915, 924 (1990). The court correctly instructed the jury that it must be unanimous in its verdict. The core question is, in light of the allegations made and the statute charged, whether the instructions "as a whole [posed] 'a genuine risk that the jury [would be] confused.'" *North II, supra*, 920 *F*.2d at 951 (quoting *United States v. Duncan, supra*, 850 *F*.2d at 1114).

Returning to the factors cited in *United States v. Ryan,* *supra,* 828 *F.*2d at 1020, we must ask whether the allegations in the misconduct count were contradictory or only marginally related to each other and whether there was any tangible indication of jury confusion. The indictment for official misconduct channeled the jury's inquiry, reciting that the teacher had engaged "in a continuing course of conduct which sexually abused, humiliated and otherwise endangered the welfare of children while [she] had a legal duty to care for the children and had assumed responsibility for their care." The acts cited certainly formed a core of conceptually-similar acts relating to the students' educational relationship with the teacher and her abuse of that relationship. We agree with the analysis in the Attorney General's brief to this Court:

> It is apparent that the acts in [the official-misconduct count] allegedly committed by defendant are not conceptually distinct. All refer to conduct which can endanger a child, either physically or mentally. Abuse includes using obscene language in the presence of a child or performing any act or deed in the presence of the child which could debauch the child's morals. Humiliation includes making the victim feel degraded. Endangering the welfare of a child includes engaging in conduct that would render a child an abused or neglected child. The evidence in this case, which included defendant forcing the victims to look at pornographic magazines, as well as cutting out pictures from them and creating "collages," which included defendant informing the victims of her sexual desires, which included defendant using foul language and telling the class that a child was menstruating, * * * clearly constituted abusive, humiliating conduct which "involved subjecting the victims to either active or passive participation in ... activity in a manner harmful to their physical or mental health." *State v. Spigarolo,* 210 *Conn.* 359, 391, 556 *A.*2d 112, 129 (1989), *cert. denied* —— *U.S.* ——, 110 *S.Ct.* 322, 107 *L.Ed.*2d 312 (1989). Because the acts alleged were conceptually similar, there was no reason to give a specific unanimity charge.

Furthermore, the jury never exhibited any signs of confusion. Early in its deliberations, the jury asked to be recharged on the official-misconduct charge and on the endangerment charge and asked for copies of the statutes associated with both charges. In so doing, the jury did not indicate that it was confused concerning its responsibility to reach a unanimous verdict. In contrast, juries in other cases have asked questions that showed their confusion regarding the unanimity issue. See *United*

*States v. Duncan, supra,* 850 *F.*2d at 1114–15 (in case involving false statements on tax return, jury's request for clarification concerning whether it had to agree on which statement defendant knew to be false manifested a tangible risk of jury confusion); *United States v. Echeverry, supra,* 719 *F.*2d at 975 (jury's written questions concerning whether it could consider multiple conspiracies indicated its confusion). Rather than confused, this was a "conscientious" and sophisticated jury. *Mangieri, supra,* 694 *F.*2d at 1281. It carefully sifted through all of the evidence as shown by its unanimous acquittal of defendant on some counts, its report of non-unanimity on other counts, and its unanimous verdict of guilt on the official-misconduct count. Thus, we are confident that there was no juror confusion in this case, and find that the general unanimity instructions were sufficient.

## IV

Defendant argues that because she was not convicted of the other criminal acts alleged in the indictment, she could not be found guilty of official misconduct. Defendant argues that the acts she performed (for example, exhibiting the sexually-explicit magazines) cannot provide a basis for official misconduct because those acts were not found to be criminal. We disagree.

*N.J.S.A.* 2C:30–2(a) provides:

A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:

a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner[.]

Nothing in the statute suggests that the underlying act must be criminal in nature. Thus, charges of official misconduct may be sustained without proof of a criminal act. *See State v. Stevens,* 203 *N.J.Super.* 59, 66, 495 *A.*2d 910 (Law Div.1984) ("if the actions set forth in [the] indictment [alleging official misconduct] constitute a breach of [an official] duty, whether broadly or narrowly described, the indictment is sufficient"),

*aff'd*, 222 *N.J.Super.* 602, 537 *A.*2d 774 (App.Div.1988), *aff'd*, 115 *N.J.* 289, 558 *A.*2d 833 (1989); *State v. Gleitsmann*, 62 *N.J.Super.* 15, 161 *A.*2d 747 (App.Div.) (police officer's personal use of police car and municipal telephone constituted official misconduct), *certif. denied*, 33 *N.J.* 386, 164 *A.*2d 849 (1960). To be guilty of official misconduct, a defendant must have performed the underlying act in order to obtain some benefit or to injure another. The benefit need not be pecuniary in nature and the injury need not be physical. J. Cannel, *N.J. Criminal Code Anno.* 2C:27–1 comment 3 (1991); *see also State v. Stevens, supra,* 115 *N.J.* 289, 558 *A.*2d 833 (police officer who conducted strip searches of women to gratify his sexual interests acted with purpose to obtain benefit); *State v. Scirrotto,* 115 *N.J.* 38, 46, 556 *A.*2d 1195 (1989) (benefit need not be pecuniary to satisfy bribery statute).

The State introduced evidence at trial that defendant had exhibited sexually-explicit magazines to her students; that she had had the children make cut-outs from those magazines; and that she had discussed her sexual proclivities and those of others with her students. All of those acts were unauthorized and were performed in the course of the exercise of her official function as teacher, presumably, as the jury could have found, to satisfy her own interests. If believed by the jury, defendant's course of conduct would undoubtedly constitute official misconduct.

## V

Ordinarily, a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict. There may be circumstances in which it appears that a genuine possibility of jury confusion exists or that a conviction may occur as a result of different jurors concluding that a defendant committed conceptually distinct acts. We hold that when there is such a danger of a fragmented verdict, the

court must instruct a jury, on request, that if a guilty verdict is returned, the jury must be unanimous on the underlying facts. Such a charge was not requested here. We are satisfied that in the circumstances of this case, there was no genuine possibility of jury confusion about its responsibility unanimously to find defendant guilty of official misconduct on the specifications charged.

The judgment of the Appellate Division is affirmed.

POLLOCK, J., dissenting.

Because the rule requiring a unanimous verdict of guilt in criminal trials is "fundamental," doubt about the jury's consensus strikes at the heart of a defendant's right to a fair trial. *See State v. Reynolds*, 41 *N.J.* 163, 187, 195 *A.*2d 449 (1963), *cert. denied*, 377 *U.S.* 1000, 84 *S.Ct.* 1930, 12 *L.Ed.*2d 1050 (1964); *State v. Cordasco*, 2 *N.J.* 189, 202, 66 *A.*2d 27 (1949); *R.* 1:8–9. I agree with the majority that generally the trial court must give a specific unanimity instruction when confronted with the danger of a fragmented verdict. *Ante* at 637. I differ, however, with the application of that rule to this case. Consequently, I would reverse defendant's conviction for official misconduct and remand for retrial on that charge.

For several years before the present incident, defendant, Ruth Parker, had taught perceptually-impaired nine- to eleven-year-old students in North Bergen. On February 19, 1986, in response to a parental complaint, two school administrators searched Parker's classroom. In her closet, the two administrators found a bottle of rum and an envelope containing several pornographic magazines. The principal suspended Parker and interviewed her students. During these interviews and before the grand jury, the students recounted incidents in which Parker had solicited certain students to bring liquor and pornographic magazines from their homes, had instructed students to make collages and drawings from the pornography, had participated in the pornographic artwork, had cursed at students, had

enclosed students in cardboard boxes or made them write words or phrases one hundred times when they misbehaved, had changed students' answers on tests and homework, had told the class when a student was menstruating, had told students that she wanted to sleep with the school principal, and had told students that the art teacher was a drug addict and that the gym teacher was a lesbian.

A Somerset County grand jury indicted Parker, charging her with four counts of sexual assault, one count of attempted sexual assault, five counts of endangering the welfare of children, and one count of official misconduct. On the official misconduct count, the indictment repeated the statutory elements of the crime and stated that Parker had engaged "in a continuing course of conduct which sexually abused, humiliated and otherwise endangered the welfare of children while [she] had a legal duty to care for the children." Although the indictment contains eleven counts of criminal conduct, it never specifies even the superficial details of that conduct. Except for the counts involving physical sexual abuse, the indictment leaves to speculation how Parker "humiliated" or otherwise "endangered" the welfare of her students. Her attorney neither challenged the indictment nor requested a bill of particulars.

At trial, moreover, without objection from Parker's attorney, the State elicited from the student witnesses the details of the alleged crimes. Their testimony was problematic. It deviated significantly from their taped interviews and their grand jury testimony. Several of the students who had claimed that Parker had touched them sexually or that they had witnessed Parker touching other students recanted their earlier statements. On cross-examination, many admitted to having lied before the grand jury and to having fabricated parts of their stories. As the Appellate Division noted, the State's case was "replete with recantation, contradiction, inconsistencies and confusion."

At the close of trial, the jury was faced with a pastiche of discrete acts, any of which could arguably support convictions for official misconduct and child endangerment. The trial court charged the jury that to convict Parker of official misconduct it must find that (1) she had been a public servant; (2) she had acted with a purpose to gain a benefit; (3) the act had related to her office; (4) the act had been unauthorized or performed in an unauthorized manner; and (5) she had known the act was unauthorized or performed in an unauthorized manner. Although the court instructed the jury on the need for a unanimous verdict, it never explained that the jury must unanimously agree on the conduct constituting the requisite "unauthorized act." The charge indicated that to convict Parker of official misconduct, the jury need only agree unanimously that Parker had committed some undefined "unauthorized act." Defense counsel neither objected to the charge nor requested a specific instruction on unanimity.

After deliberating over a period of three days, the jury acquitted Parker of all of the sexual assault charges and could not reach a decision on either the attempted sexual assault charge or the five counts of endangering the welfare of children. It convicted her of official misconduct. The trial court sentenced Parker to five years in prison.

In an unreported decision, the Appellate Division affirmed the conviction, with one judge dissenting. Although Parker did not raise the issue of jury unanimity before the Appellate Division, that issue was the focus of the dissent. The dissent argued that the peculiar circumstances of this case were "the perfect setting for a patchwork verdict." Finding that the failure to give a specific "unanimity" instruction violated Parker's right to a unanimous jury, the dissent would have reversed Parker's conviction. I agree.

I share the majority's revulsion at the acts charged. Nonetheless, every defendant, even one charged with loathsome offenses, is entitled to a fair trial. The vagueness of the

indictment, the confusing and contradictory trial testimony, the disturbing nature of the numerous allegations, and the vagueness of the official misconduct statute created a real danger of jury confusion. Parker's actions, moreover, were not sufficiently similar to constitute one continuing offense. These circumstances lead me to conclude that the trial court committed plain error in not providing a specific charge on unanimity. In sum, the charge deprived defendant of the right to a fair trial.

-I-

As the majority recognizes, trial courts must give specific "unanimity" instructions when a jury is likely to be confused or to render a "fragmented verdict." *Ante* at 637. A general charge on unanimity may not suffice " 'where the allegations in a single count [of an indictment] are either contradictory or only marginally related to one another * * * or where there is a variance between the indictment and the proof at trial * * * or where there is a tangible indication of jury confusion.' " *Ante* at 636–37 (citing *United States v. Ryan*, 828 *F.*2d 1010, 1020 (3d Cir.1987)). Although the *Ryan* factors offer guidance, the ultimate test is whether a genuine potential for jury confusion existed. *Ante* at 636; *see United States v. Beros*, 833 *F.*2d 455, 460 (3d Cir.1987).

Neither the majority nor I can identify the act or acts that the jury unanimously found Parker had committed. In short, the jury may have convicted Parker without agreeing unanimously on what wrong she had committed. Various considerations suggest that result. For example, the State alleged numerous alternative methods of committing the single crime of official misconduct. See *State v. Lomagro*, 113 *Wis.*2d 582, 592, 335 *N.W.*2d 583, 589 (1983) (right to unanimous verdict implicated when State alleges alternative means of committing one crime). In that context, as the majority correctly notes, a specific "unanimity" instruction is required if the modes are

"conceptually distinct." *Ante* at 634; *see United States v. Gipson,* 553 *F*.2d 453, 458 (5th Cir.1977); *Lomagro, supra,* 113 *Wis.*2d at 592, 335 *N.W.*2d at 587. Like the majority, *ante* at 636, I recognize the analytical limitations of the "conceptual distinction" test, *see Schad v. Arizona,* — *U.S.* —, —, 111 *S.Ct.* 2491, —, 115 *L.Ed.*2d 555, — (1991). That test, however, is as useful as any other articulation to determine whether a defendant's trial was fundamentally fair.

The rationale of the "conceptual distinction" test is that in certain cases, separate acts are so similar that they are essentially one continuous act for the purposes of jury unanimity. *See United States v. Frazin,* 780 *F*.2d 1461, 1468 (9th Cir.), (no specific instruction required because although government alleged different acts, acts comprised continuing scheme), *cert. denied,* 479 *U.S.* 844, 107 *S.Ct.* 158, 93 *L.Ed.*2d 98 (1986); *Lomagro, supra,* 113 *Wis.*2d at 593, 335 *N.W.*2d at 590. If the acts share continuity in time, victim, manner, and perpetrator, that the jury mentally separated them and somehow disagreed on which of the different acts defendant had committed is unlikely. *Cf. United States v. Payseno,* 782 *F*.2d 832, 836–37 (9th Cir.1986) (specific instruction required because government alleged three alternative acts involving separate victims, occurring at different times and different locations, and using different methods); *United States v. Echeverry,* 698 *F*.2d 375, 377, *modified,* 719 *F*.2d 974 (9th Cir.1983) (specific instruction necessary when jury mentally separated one conspiracy charged in indictment into two different conspiracies).

The majority agrees with the Attorney General that the acts alleged in the official misconduct charge are not conceptually distinct. *Ante* at 639. I disagree. As pointed out by the dissent below, "the alleged incidents ranged over fifteen weeks and included conduct of widely varying quality and gravity." The incidents involved different students, who testified with differing levels of credibility. More importantly, the alleged acts were substantively different, and some of them were more believable than others. The State's proof involved numerous

discrete acts falling within wholly different conceptual group-
ings. Some of the incidents are arguably "conceptually sim-
ilar" in that they all involved sexual misconduct: the distribu-
tion of pornographic magazines, the touching, the discussions
of Parker's and other teachers' sexual proclivities, and the
announcement of a student's menstrual cycle. In addition to
the charges of sexual misconduct, however, the State sought to
prove that Parker had punished the class by enclosing them in
cardboard and by forcing them to write phrases 100 times, that
she had solicited a student to bring liquor to class, that she had
changed the answers on certain students' tests and homework,
and that she had cursed at the class. The difference in the acts
is obvious. They differ in their nature, seriousness, and moti-
vation. Even if the alleged acts of sexual misconduct were
similar, the other acts could not be consolidated for the pur-
poses of jury unanimity.

By consolidating acts that share only a general similarity
within the same conceptual grouping, the majority eviscerates
the rule requiring unanimity on the underlying act. Its conclu-
sion that the acts alleged "formed a core of conceptually-similar
acts relating to the students' educational relationship with the
teacher and her abuse of that relationship," *ante* at 638–39,
essentially means that juries need agree on only the general
elements of the crime, not the underlying acts. Thus, under
the majority's analysis, to convict Parker of official misconduct,
the jury need have agreed only that she had committed "unau-
thorized acts" in her teaching position. Such an analysis ren-
ders meaningless the rule requiring unanimity on the underly-
ing act. Essentially, the majority authorizes a jury to convict
when it has only a generalized suspicion that the defendant did
something bad but cannot agree what the defendant did.

In addition to the myriad of discrete acts alleged by the State,
other factors contributed to the potential for jury confusion in
this case. The vagueness of the misconduct statute permitted
the jury to convict Parker without agreement on the substan-
tive basis for the conviction. That statute does not criminalize

any specific behavior; rather, it prohibits any intentional "unauthorized" act by a public official acting within the scope of employment. See *N.J.S.A.* 2C:30-2. It is "necessarily broad" so as to cover a wide variety of misbehavior by public officials. *State v. Begyn*, 34 *N.J.* 35, 49, 167 *A.*2d 161 (1961). In the absence of more specific jury instructions, that breadth creates the risk that a jury may convict a defendant of official misconduct simply because it finds that he or she acted immorally. *See State v. Cohen*, 32 *N.J.* 1, 11, 158 *A.*2d 497 (1960) (Weintraub, C.J., concurring) (broad construction of official misconduct statute would result in tyranny of vagueness); *State v. Winne*, 12 *N.J.* 152, 183, 96 *A.*2d 63 (1953) (Wachenfeld, J., dissenting) (act not crime merely because it is wrong). In this case, the breadth of the statute may have caused the jury to convict Parker based on a vague notion that she had done something immoral. As the dissenting judge below stated, the jury, confronted by a disturbing array of acts, understandably may have been "attracted to a charge that seemed expansive and vague enough to absorb and express the individual doubts each juror had about defendant's general behavior."

As the United States Supreme Court recently acknowledged, the notion that "no person may be punished criminally save upon proof of some specific illegal conduct" is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Schad, supra*, —— *U.S.* at ——, 111 *S.Ct.* at ——, 115 *L.Ed.*2d ——. *Schad* is a plurality opinion in which the Court held that due process did not require a specific "unanimity" instruction when the state murder statute characterizes premeditated and felony murder as a single crime and the prosecution presents both theories to the jury. *Id.* at ——, 111 *S.Ct.* at ——, 115 *L.Ed.*2d at ——. Writing for the plurality, Justice Souter acknowledged that due process would not permit a crime "so generic that any combination of jury findings of embezzlement, murder, tax evasion or littering would suffice for conviction." *Id.* at ——, 111 *S.Ct.* at ——, 115 *L.Ed.*2d at ——. On the facts of that case, however, he

concluded that states could reasonably define felony and pre-meditated murder as alternative means of committing the single crime of murder. *See ibid.*

In the present case, the offense of official misconduct is so vague that it conjures up Justice Souter's generic crime. *Ibid.* The problem here, however, is not merely the vagueness of the statute, indictment, and jury charge, but also the contradictory nature of the State's proofs. That combination engendered the genuine possibility that the jury did not agree what "specific illegal conduct," *id.* at ——, 111 *S.Ct.* at ——, 115 *L.Ed.*2d at ——, Parker had committed. *See McKoy v. North Carolina,* 494 *U.S.* 433, 449 n. 5, 110 *S.Ct.* 1227, 1237 n. 5, 108 *L.Ed.*2d 369, 385 n. 5 (1990) (Blackmun, J., concurring) (general requirement that jury need not agree on preliminary factual issues limited by exception requiring substantial agreement on principal factual elements underlying specified offense). The effect was to deprive Parker of her fundamental right to a conviction based on proof of specific illegal acts. *See Schad, supra,* —— *U.S.* at ——, 111 *S.Ct.* at ——, 115 *L.Ed.*2d at ——.

Neither the indictment, the summations, nor the jury charge narrowed the circumstances under which the jury could convict Parker. On the contrary, they contributed to the erroneous notion that the jury need agree only that Parker had committed an unauthorized act relating to her duties as a teacher.

The indictment vaguely alleged that Parker had engaged in a continuing course of conduct that sexually abused, humiliated, and endangered the welfare of her students. The differing verdicts on the several counts suggest that the jury thought that it could choose among the alleged acts. After acquitting defendant of sexual abuse and disagreeing on the other charges, the jury could have concluded that "humiliating" students constituted official misconduct.

Finally, the jury instructions exacerbated the potential for a fragmented verdict. The trial court charged the jury that its verdict must be unanimous. The court informed the jury,

however, that to convict of official misconduct, it need find only that Parker had committed an "unauthorized act" relating to her position as a public servant. On the second day of its deliberations, the jury asked the trial court to repeat the charge on official misconduct and endangerment. It also asked to see a copy of the official misconduct and endangerment statutes. Parallelling the elements of the broad statute, the supplemental charge, like the original one, served only to reinforce the premise that the jury could convict Parker of official misconduct if it unanimously found that she had "humiliated" her students in some undefined, undescribed way.

Because defense counsel did not object to the charge, the matter arises as one of plain error. The test is whether the error "possessed a clear capacity to bring about an unjust result." *State v. Hock*, 54 *N.J.* 526, 538, 257 *A.*2d 699, *cert. denied*, 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970). Here, the described error had that capacity. The charge directed the jury that to convict Parker of official misconduct, it need not unanimously agree on the act that she had committed. The indictment, the testimony, the jury charge, and the elements of the crime reinforced the error that the jury could convict Parker of official misconduct simply if it believed that she had done some undefined bad acts. Apparently, the despicable nature of the charged conduct impelled the jury towards conviction, but the State's case was so weak that the jury could not convict defendant of a specific substantive crime. Following the court's charge, however, the jury may have gravitated toward the generic crime of official misconduct, which enabled them to convict her without agreeing on the basis of that conviction. Under these circumstances, I am constrained to find that Parker was denied her right to a unanimous jury verdict.

Accordingly, I would reverse the judgment of the Appellate Division and remand for a new trial.

CLIFFORD, J., joins in this opinion.

*For affirmance* —Chief Justice WILENTZ, and Justices HANDLER, O'HERN and GARIBALDI—4.

*For reversal* —Justices CLIFFORD and POLLOCK—2.