NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1645-15T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MAYHEW D. WATSON, JR., a/k/a
MAYHEW D. WATSON,

 Defendant-Appellant.

 Submitted August 30, 2017 – Decided October 3, 2017

 Before Judges Alvarez and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Salem County, Indictment
 No. 14-02-0075.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Alicia J. Hubbard, Assistant
 Deputy Public Defender, of counsel and on the
 briefs).

 John T. Lenahan, Salem County Prosecutor,
 attorney for respondent (Geoffrey Gleason,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Tried by a jury, defendant Mayhew D. Watson, Jr., was

convicted of second degree eluding, N.J.S.A. 2C:29-2(b). The
trial judge sentenced him on November 6, 2015, to a nine-year term

of imprisonment. Defendant appeals and we affirm.

 At trial, the State presented the testimony of two officers

and moved into evidence Mobile Video Recorder (MVR) films of the

incident. Defendant came to the attention of a Penns Grove

patrolman, Christopher Hemple, when he was captured on radar

driving approximately 46 miles per hour in a 25 mile per hour zone

at 11:00 p.m. The officer activated his lights, and defendant put

on his blinker and began to pull over, slowing to a near stop.

Suddenly, the car pulled away, traveling on the shoulder of the

roadway to the center line of the road, and back again. It passed

the Carney's Point Police Headquarters, a high school, and

travelled through a well-lit residential area. The vehicle

proceeded onto the southbound ramp of Route 295, crossing the

yellow line to the driver's left and back to the fog line on the

right hand side of the road. The officer followed, with his lights

and siren activated. On Route 295, the car suddenly cut in front

of a tractor trailer and drove on for seven to eight miles until

it finally pulled over and came to a standstill. The jury watched

the MVR footage from Hemple's car.

 The officer estimated defendant's speed during the chase to

have been in excess of 100 miles per hour. When confronted,

 2 A-1645-15T4
defendant told Hemple that he did not stop the car because he was

looking for a safe place to pull over.

 Sergeant John Stranahan, a second Penns Grove officer, also

testified. He was Hemple's back up, and his MVR also recorded the

event. That CD was also played to the jury. He agreed that

defendant's speed, once on Route 295, exceeded 100 miles per hour.

 Because another judge had prepared the charges and verdict

sheet, the trial judge on the record confirmed counsel's possession

of the proposed instructions, drawn from the Model Jury Charges,

and asked if they were "acceptable[.]" Both attorneys answered

in the affirmative. The trial judge added "Defendant's Election

not to Testify," Model Jury Charge (Criminal), "Defendant's

Election Not to Testify (2009), and instructed the jury regarding

the lesser included offense of third-degree eluding. Model Jury

Charge (Criminal), "Eluding an Officer" (2004).

 After giving his instructions to the jury, the judge asked

if counsel "wish[ed] to be heard with regards to the charge?" Both

attorneys declined.

 At sentencing, the State unsuccessfully moved for an extended

term to be imposed by the judge, pursuant to N.J.S.A. 2C:44-3a.

Defendant had been convicted of six prior indictable offenses and

was convicted on four separate dates. Although the judge denied

the application, he found aggravating factors 3, 6, and 9, and no

 3 A-1645-15T4
factors in mitigation. N.J.S.A. 2C:44-1(a) and N.J.S.A. 2C:44-

1(b). The judge found the aggravating factors based on defendant's

failure to acknowledge the gravity of the offense that he

committed, the extent of his prior record, and the need to deter

him and others from engaging in such dangerous conduct. The judge

specifically discussed and rejected multiple mitigating factors,

including those in defendant's sentencing brief: 2, 4, 8, 9, 10,

and 11. N.J.S.A. 2C:44-1(b)(2), (4), (8), (9), (10), (11). He

based his decision on defendant's individual circumstances.

Relevant to this appeal with regard to mitigating factor 11, the

judge observed that defendant's incarceration would undoubtedly

cause a hardship on his dependents, however, the hardship was no

greater than that inflicted in every case where a family is left

without a father. Nothing in the record suggested an excessive

or unique hardship.

 On appeal, defendant raises the following points:

 POINT I

 BECAUSE THE JUDGE FAILED TO INSTRUCT THE JURY
 THAT IT MUST BE UNANIMOUS WITH RESPECT TO THE
 MANNER IN WHICH A RISK WAS POSED TO ANY PERSON
 DURING THE COURSE OF AN ELUDING, AND THE
 VERDICT SHEET DID NOT REQUIRE THE JURY TO
 SPECIFY WHAT RISK WAS POSED, THE DANGER OF A
 PATCHWORK VERDICT REQUIRES REVERSAL. U.S.
 CONST. Art. I, Pars. 1, 9, 10. (Not Raised
 Below)

 4 A-1645-15T4
 POINT II

 A POLICE OFFICER FACT WITNESS IMPROPERLY
 OFFERED OPINION TESTIMONY THAT WATSON'S
 ACTIONS WERE HAZARDOUS, DENYING THE JURY THE
 OPPORTUNITY TO SERVE AS THE JUDGES OF THE
 FACTS AND DENYING WATSON A FAIR TRIAL. (U.S.
 CONST. AMENDS. V, VI, AND XIV; N.J. CONST.
 (1947, ART. I, PARS. 1, 9 AND 10) (Not Raised
 Below)

 POINT III

 AN EXCESSIVE SENTENCE WAS IMPOSED AFTER THE
 COURT FAILED TO CONSIDER APPLICABLE MITIGATING
 FACTORS AND IMPROPERLY CONSIDERED WATSON'S
 CONTINUED DENIAL OF GUILT

 a. The Court Improperly Considered The Fact
 That Watson Maintained His Claims of Innocence
 And A Defense At Sentencing

 I.

 Defendant did not object to the jury instructions now

challenged on appeal. See R. 1:7-2 ("except as otherwise provided

by R. 1:7-5 and R. 1:10-2 (plain error), no party may urge as

error any portion of the charge to the jury or omissions therefrom

unless objections are made thereto before the jury retires to

consider its verdict. . . .") As a result, the plain error

standard informs our consideration of defendant's first point.

See R. 1:10-2; State v. Wakefield, 190 N.J. 397, 473 (2007).

Furthermore, it is presumed that when a defendant does not object

to a jury charge, the charge was not mistaken and was unlikely to

 5 A-1645-15T4
prejudice defendant's case. State v. Singleton, 211 N.J. 157, 182

(2012).

 Defendant contends the jury should have been instructed to

reach a unanimous consensus as to which risks were posed by

defendant's conduct while he was eluding. He further argues that

the verdict sheet improperly failed to elicit a unanimous vote on

the nature of the risk. Defendant asserts that this raised the

specter of a "patchwork verdict[,]" one in which the jury was not

unanimous as to an essential statutory element. We do not agree.

 The eluding statute states:

 Any person, while operating a motor vehicle
 . . . who knowingly flees or attempts to elude
 any police or law enforcement officer after
 having received any signal from such officer
 to bring the vehicle or vessel to a full stop
 commits a crime of the third degree; except
 that, a person is guilty of a crime of the
 second degree, if the flight or attempt to
 elude creates a risk of death or injury to any
 person.

 [N.J.S.A. 2C:29-2(b).]

 In construing a statute, we attempt to discern the meaning

and intent of the legislature. The best indicator of such intent

is the law's plain language. State v. Gandhi, 201 N.J. 161, 176

(2010). A statute's culpability requirement generally applies to

all elements of a crime, "unless a contrary purpose plainly

appears." Id. at 177 (citation omitted).

 6 A-1645-15T4
 "[A]ny double jeopardy concerns or issues of non-unanimous

guilty verdicts, may be addressed by carefully tailored jury

instructions, a detailed verdict sheet, or both." State v. Salter,

425 N.J. Super. 504, 516 (App. Div. 2012). However, the need for

such tailoring only arises when the language of the statute

implicates those issues, at the request of counsel, or due to the

circumstances of the offense.

 The mere fact that in closing, the prosecutor gave examples

of jeopardy created by defendant's conduct, including the risky

maneuvers around the tractor-trailer and potential injury to the

drivers of three vehicles that defendant passed on Route 295, did

not create the need for an unanimity instruction. Defendant did

not request one because none was required.

 In the absence of such a request, "the failure so to charge

does not necessarily constitute reversible error." State v.

Parker, 124 N.J. 628, 637 (1991), cert. denied, Parker v. New

Jersey, 503 U.S. 939, 112 S. Ct. 1483, 117 L. Ed. 2d 625 (1992).

To determine if a specific unanimity charge is required, "[t]he

core question is, in light of the allegations made and the statute

charged, whether the instructions as a whole [posed] a genuine

risk that the jury [would be] confused." Gandhi, supra, 201 N.J.

at 193 (alterations in original) (quoting Parker, supra, 124 N.J.

at 638).

 7 A-1645-15T4
 On review we ask whether the acts alleged are conceptually

similar, or are contradictory, or only marginally related to each

other. Ibid. We also ask if there was any tangible indication

of jury confusion. Ibid. (quoting Parker, supra, 124 N.J. at

639).

 The record is devoid of any indication of jury confusion.

Moreover, the very nature of the statute and the prohibited

activity is one that involves a continuing course of conduct,

identical acts occurring on public roadways. See N.J.S.A. 2C:29-

2(b). The acts enumerated by the prosecutor were thus conceptually

similar. See Parker, supra, 124 N.J. at 635. The individuals he

mentioned, including defendant, were all members of the public

whom defendant endangered by the act of eluding. And public safety

is the singular focus of the statute, whether the identity of the

individuals were known or not known. These instructions were

incapable of producing an unjust result. See R. 2:10-2. It is

the general public that is the victim here, not any individuals.

Thus the court did not err by failing to sua sponte provide a

unanimity instruction on the eluding charge or a more detailed

jury verdict sheet.

 II.

 Defendant next contends that Hemple's statement that

defendant's act of cutting in front of the tractor-trailer was

 8 A-1645-15T4
"very hazardous" was an improper expert opinion proffered by a

fact witness. We consider this argument to be so lacking in merit

as to not warrant much discussion in a written opinion. See R.

2:11-3(e)(2).

 Hemple was describing what he saw and did so as a lay witness.

See N.J.R.E. 704. He was not expressing an opinion on the ultimate

issue as to whether defendant's driving made him guilty of the

offense. He was expressing an opinion from the common sense

perspective that, while driving at speeds as high as 100 miles per

hour, to cut in front of a tractor-trailer was highly hazardous

driving. That un-objected to testimony certainly had no

possibility of producing an unjust result.

 III.

 Given defendant's substantial prior criminal history, the

record amply supported the trial judge's conclusion that

aggravating factors 3, 6, and 9 applied. The judge was not

required to find mitigating factor 11 because defendant lived with

two of his children and supported a third. Before the failure to

include that factor in the sentencing calculus is considered error,

some individualized harm must be demonstrated.

 Appellate review of a sentence ensures that the trial court's

"exercise of discretion [is] based on findings of fact that are

grounded on competent, reasonable credible evidence" and that it

 9 A-1645-15T4
"appl[ied] correct legal principles in exercising its discretion."

State v. Roth, 95 N.J. 334, 363 (1984). Sentences should be

modified only if a trial court makes "such a clear error of

judgment that it shocks the judicial conscience." Id. at 364.

Aggravating and mitigating factors identify "individual

circumstances which distinguish the particular offense from other

crimes of the same nature." State v. Yarbough, 195 N.J. Super.

135, 143 (App. Div. 1984), remanded for resentencing on other

grounds, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014, 106 S.

Ct. 1193, 89 L. Ed. 2d 308 (1986).

 In this case, the aggravating factors were supported by the

record. In contrast, the record did not support a single

mitigating factor.

 We review "a trial court's 'sentencing determination under a

deferential standard of review.'" State v. Grate, 220 N.J. 317,

337 (2014) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)).

We do not substitute our judgment for that of the sentencing court.

Id. at 606. We are satisfied the trial court followed the

sentencing guidelines, and its findings of fact and application

of the statutory sentencing factors were based on competent

credible evidence in the record. The term of years imposed does

not shock the judicial conscience. See State v. Bolvito, 217 N.J.

 10 A-1645-15T4
221, 228 (2014). The judge's sentencing decision was thus entirely

proper.

 Affirmed.

 11 A-1645-15T4