# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3135-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.P.,

    Defendant-Appellant.

_____

Submitted October 18, 2017 — Decided November 27, 2017

Before Judges Alvarez and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 13-09-1797.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Kerry J. Salkin, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant M.P.[1] appeals from his conviction following a jury trial. He also contends that an error in the judgment of conviction (JOC) requires a remand for its correction. After a review of the arguments in light of the record and applicable principles of law, we affirm the conviction, but remand for a correction of the JOC.

Defendant was charged in a twenty-two count indictment with two counts of armed burglary, N.J.S.A. 2C:18-2 (count one and count fourteen); two counts of possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two and count eighteen); two counts of unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three and count nineteen); two counts of witness tampering, N.J.S.A. 2C:28-5(a) (count four and count twenty); one count of terroristic threats, N.J.S.A. 2C:12-3(b) (count five); one count of criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count six); three counts of criminal contempt, N.J.S.A. 2C:29-9 (count seven, count eight, and count twenty-one); one count of armed robbery, N.J.S.A. 2C:15-1 (count nine); three counts of aggravated sexual assault, N.J.S.A. 2C:14-2(a)(count ten, count eleven, and count twelve); one count of sexual assault, N.J.S.A. 2C:14-2(c) (count thirteen); one count of aggravated assault, N.J.S.A. 2C:12-

---

[1] We use initials to protect the privacy of the individuals in this case.

1(b)(1) (count fifteen); one count of criminal restraint, N.J.S.A. 2C:13-2 (count sixteen); one count of terroristic threats, N.J.S.A. 2C:12-3(a) (count seventeen); and one count of stalking, N.J.S.A. 2C:12-10 (count twenty-two).

The criminal charges arose out of conduct that occurred in September and October 2012. All of the charges pertained to the same victim, defendant's wife, C.G.[2] Counts one through six stemmed from a September break-in incident, and counts nine through twenty related to a break-in and sexual assault in October.

The State severed and ultimately dismissed the contempt charges - counts seven, eight and twenty-one. Defendant requested separate trials for the two break-in incidents and the stalking charges. The trial court denied defendant's motion for a severance of counts one through six, nine through twenty, and twenty-two.

The testimony at trial revealed that shortly before these events, defendant and C.G. had separated and defendant had moved out of the marital home. Defendant, however, did not wish to separate or divorce and was determined to return home. C.G. testified that defendant broke into the marital home on September 6, 2012, while she and the three children were there. C.G. called the police and took the children to stay at her sister's home.

---

[2] The parties were divorced during the pendency of the criminal case.

When C.G. returned to the home on September 15, she saw defendant in the backyard. She again reported this incident to the police, telling them that defendant was harassing her everywhere she went.

On September 26, defendant approached C.G. at their children's school. He told her that he wanted to return to the marital home. When she told him no, C.G. stated that defendant "g[o]t into [her] face and he said I'm going to kill you." C.G. called the police. The following day, C.G. observed defendant parked across the street from her sister's house, and she again filed a complaint with the police.

In October, C.G. and the children were still staying at her sister's home, but they returned to the marital home in the mornings and she remained there during the day. On October 3, as the children were getting ready for school at home, C.G. noticed that "the [bathroom] window lock was broken" and the window was open. She contacted the police and when they arrived, the officer stated that she thought someone may have entered through the bathroom window. According to C.G., the officer did not conduct a full search of the home before leaving.

As she locked the door behind the officer, C.G. said defendant, who had been hiding in the house, attacked her. She stated that defendant had a knife, pulled her hair, and banged her

head against the floor. C.G. further testified that defendant choked her, and threatened to kill her if she did not drop all of the charges against him. She also stated that he sexually assaulted her. After C.G. agreed to drop all of the charges, defendant took $400 out of her purse and left the home.

Defendant also testified at the trial. He admitted being at the children's school on September 26. Although he stated he was emotional and angry during this interaction, he denied threatening C.G. Defendant also did not dispute that he parked outside C.G.'s sister's house, but he said he wanted to speak with his wife's sister to ask her to convince C.G. to reunite with him.

As to the events of October 3, defendant testified that C.G. called him that morning because she needed $400 and asked him to come to the house. When defendant arrived, he said that C.G. invited him in and explained why she needed the money. She also showed defendant the bathroom window and explained that she thought someone had attempted to break in. Defendant testified that he asked C.G. if he could come back home and told her he missed his family. He stated that the two of them became affectionate and eventually had consensual sexual intercourse.

According to defendant, C.G. asked him for the money, but he only had some of it. He then said that C.G. cursed at him, picked up a knife, and lunged towards him; cutting his hand and fingers

as he attempted to protect himself.  They began tussling on the floor and defendant admitted that he punched her once in the face while trying to defend himself.  Defendant testified that after the altercation, they bandaged each other's hands.  He gave C.G. the money he had, told her he would bring the rest the next day, and then left the home.

Defendant was tried before a jury and convicted of third-degree assault, a lesser included offense of the charged offense of aggravated assault, <u>N.J.S.A.</u> 2C:12-1(b)(1) (count fifteen).[3] The jury also convicted defendant of fourth-degree stalking, <u>N.J.S.A.</u> 2C:12-10, count twenty-two and acquitted him of the remaining seventeen counts.  Defendant was sentenced to concurrent probationary terms on each conviction with the condition that he serve a 364-day prison term.[4]  The trial court also entered a permanent restraining order, barring defendant from having any contact with his ex-wife.

On appeal, defendant raises the following arguments:

> <u>POINT I</u>:  THE COURT HAVING ALLOWED THE TWO BREAK-INS TO BE TRIED TOGETHER, IT WAS OBLIGATED TO INSTRUCT THE JURY ON THE LIMITED USE OF THE OTHER-CRIME EVIDENCE, AND SPECIFICALLY, THAT IT COULD NOT USE THE

---

[3] The JOC indicates a conviction of count sixteen, rather than count fifteen.

[4] Defendant was incarcerated pending trial and had 1257 days of jail credit.

A-3135-15T3

EVIDENCE OF EACH BREAK-IN AS PROOF THAT DEFENDANT IS A PERSON OF CRIMINAL CHARACTER AND THEREFORE MORE LIKELY GUILTY OF ALL OF THE CHARGED OFFENSES. (Not Raised Below)

POINT II: THE STALKING CONVICTION MUST BE REVERSED BECAUSE THE JURY DID NOT IDENTIFY THE INCIDENTS ON WHICH IT BASED THE CONVICTION, ACQUITTED DEFENDANT OF SOME OF THE PROFFERED INCIDENTS, AND WAS NOT REQUIRED TO FIND EACH INCIDENT UNANIMOUSLY. (Not Raised Below)

POINT III: THE JUDGMENT OF CONVICTION MUST BE AMENDED BECAUSE IT INCORRECTLY STATES THE VERDICTS ON COUNTS 15 AND 16.

Defendant did not raise these contentions at trial. He did not request either that the trial court provide a limiting instruction pursuant to N.J.R.E. 404(b) or a special unanimity instruction pertaining to the stalking charge. As a result, we review his arguments for plain error. See State v. Brown, 138 N.J. 481, 535 (1994). Plain error is that which is "clearly capable of producing an unjust result." State v. Whitaker, 200 N.J. 444, 465 (2009) (quoting R. 2:10-2).

Defendant argues that a Rule 404(b) limiting instruction was required at trial because the evidence presented to the jury of several break-ins was evidence of "other crimes." We disagree. It is not necessary to give a Rule 404(b) limiting instruction when multiple charged offenses in a single indictment are being prosecuted in a single trial.

Rule 404(b) addresses <u>uncharged</u> crimes, wrongs, or acts. <u>See</u> <u>State v. Rose</u>, 206 <u>N.J.</u> 141, 179-80 (2011). "The threshold determination under <u>Rule</u> 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under <u>Rule</u> 404(b), or whether it is evidence intrinsic to the charged crime[s]" before the jury at trial. <u>Id.</u> at 179. If evidence of an uncharged crime, wrong, or act is admitted during a trial, "limiting instructions must be provided to inform the jury of the purposes for which it may, and for which it may not, consider the evidence of defendant's <u>uncharged</u> misconduct." <u>Id.</u> at 161 (emphasis added).

Evidence introduced to directly prove a <u>charged</u> offense, however, is "intrinsic" and not subject to <u>Rule</u> 404(b). <u>Id.</u> at 180-81. Here, all of the presented evidence pertained to <u>charged</u> crimes for which defendant was being prosecuted in this trial. There was no evidence of any "other crimes" and, therefore, no obligation to issue a limiting instruction under <u>Rule</u> 404(b).

Moreover, the trial judge advised the jury in his instructions that there were eleven separate charged offenses in the indictment and that "[e]ach is a separate offense named in a separate count." He stated that defendant was "entitled to have each count considered separately by the evidence which [was] relevant and material to [that] particular charge based on the law." <u>See</u> <u>State</u>

v. Pitts, 116 N.J. 580, 603 (1989) (stating that in the case where multiple charges are joined, it is "adequate" that the court "caution[] the jurors to deliberate separately on each of the . . . counts, and to return a judgment of conviction only if convinced that each element of the individual counts had been proved beyond a reasonable doubt.").

Defendant also contends that the trial court erred in failing to issue a specific unanimity instruction on the stalking charge because the State introduced evidence of several incidents. He relies on State v. Parker, 124 N.J. 628, 633 (1991), cert. denied, 502 U.S. 939, 112 S. Ct. 1483, 117 L. Ed. 2d 625 (1992), for his assertion that, without a special instruction, there was a risk that a conviction occurred as the result of different jurors concluding that defendant committed different acts. Defendant did not request this charge and, therefore, we again review it for plain error.

In Parker, a jury convicted a teacher of official misconduct against children for a series of alleged acts, including making them watch pornography, cursing at them, and insulting them. Id. at 631-32. On appeal, the defendant argued that because the trial court failed to include a specific instruction on unanimity, the verdict should be vacated, as it was unclear as to which act the jury convicted her. Id. at 632-33. The Court disagreed, holding

that because all of the alleged actions subjected the victims to "abusive, humiliating conduct" which was meant to be "harmful to their physical or mental health[,]" the allegations were conceptually similar, and thus, did not require a specific unanimity instruction. Id. at 639.

Here, the alleged conduct involved acts that were conceptually similar. There was sufficient evidence presented on each incident for the jury to reasonably conclude that any of the five alleged incidents constituted a course of conduct amounting to stalking. Defendant's appearances on multiple occasions at the marital home, the children's school, and the home of C.G.'s sister were all conceptually related acts of stalking. The series of acts alleged in this case, committed in September and October 2012, which the jury found constituted stalking under N.J.S.A. 2C:12-10, involved such similar and continuous behavior that no special unanimity instruction was required.

We also note that the trial judge explained to the jury at least five times that the judgment "must be unanimous as to each charge. . . . [which] means [that] all [jurors] must agree if the [d]efendant is guilty or not guilty on each charge." Defendant cannot demonstrate plain error here because the general unanimity instruction, which the trial judge repeated and explained numerous times during the jury charge, was sufficient.

10                                                    A-3135-15T3

We do agree that the JOC contains an error requiring correction. It should reflect that defendant was convicted on count fifteen, not count sixteen. We, therefore, remand to the trial court for the entry of an amended JOC.

Affirm in part, remand solely for the entry of a corrected JOC. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3135-15T3