851 A.2d 676 (2004)
370 N.J. Super. 413
STATE of New Jersey, Plaintiff-Respondent,
v.
Tyrone L. GENTRY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 2004.
Decided June 30, 2004.
*677 Susan Brody, Assistant Deputy Public Defender, argued the cause for the appellant (Yvonne Smith Segars, Public Defender; Ms. Brody, of counsel and on the brief).
Robin A. Harnett, Assistant Prosecutor, argued the cause for respondent (Vincent P. Sarubbi, Camden County Prosecutor, attorney; Ms. Hamett, of counsel and on the brief).
Before Judges COBURN,[1] WELLS and C.S. FISHER.
The opinion of the court was delivered by FISHER, J.A.D.
Defendant was charged with one count of second-degree robbery, in violation of N.J.S.A. 2C:15-1, and, after being convicted, was sentenced to a sixteen year term of imprisonment subject to an 85% parole disqualifier, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. Mandatory monetary assessments were also imposed.
On appeal, defendant raises the following issues:
I. THE COURT'S REFUSAL TO REQUIRE A UNANIMOUS JURY FINDING AS TO WHICH OF DEFENDANT'S ACTS CONSTITUTED A USE OF "FORCE" DEPRIVED HIM OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW. HENCE, HIS ROBBERY CONVICTION MUST BE REVERSED AND THE MATTER REMANDED FOR A NEW TRIAL.
II. THE COURT ERRED IN PERMITTING THE PROSECUTOR TO ELICIT TESTIMONY THAT TIFFANY DAVIS HAD BEEN NOTICEABLY PREGNANT AT THE TIME OF THE INCIDENT.
III. THE IMPOSITION OF AN EXTENDED-TERM SENTENCE OF 16 YEARS WAS MANIFESTLY EXCESSIVE AND SHOULD BE VACATED.
The contentions raised in Points II and III are clearly without merit and do not warrant discussion. R. 2:11-3(e)(2).
In Point I, defendant questions whether the jury rendered a unanimous verdict when all jurors agreed defendant used force but were divided in considering against whom the force was used. Our inquiry into whether this verdict was unanimous differs from more common challenges to jury unanimity. For example, defendant was not charged with violating a statute which contains "conceptually distinct" offenses, as in United States v. Gipson, 553 F.2d 453, 458 (5th Cir.1977), or accused of committing a distinct offense in multiple, contradictory ways, thus raising the potential for a non-unanimous "patchwork" verdict, as in State v. Frisby, 174 N.J. 583, 599-600, 811 A.2d 414 (2002). Instead, we are required to consider a third category which has received little attentionwhether a particular fact, as to which a jury announces its disagreement, is sufficiently material to call into question the unanimity of its verdict. Because we *678 conclude the jury's disagreement as to which of two persons was victimized by defendant's use of force was immaterial, the judgment of conviction will be affirmed.
At trial, the jury heard evidence that, on November 14, 2001, defendant entered a Rite-Aid drug store in Camden. While he was hiding some small boxes of cigars on his person, a store employee, Tiffany Davis, approached defendant and told him to put the cigars back and leave. Defendant started to comply when Davis's attention was diverted by an unrelated shoplifting incident. Seizing this opportunity, defendant reached for several large boxes of cigars and ran toward the front of the store. Davis testified that defendant "charged" into her, knocking her backwards. Defendant testified that he simply "brushed" Davis as he ran.
As defendant fled, Davis shouted to David Lowe, the store manager. Lowe testified that he ran to the front of the store and intercepted defendant in the vestibule, grabbing the back of defendant's pants in an attempt to keep him from leaving the store. This struggle proceeded onto the sidewalk, where according to one witness, defendant punched at Lowe and tried to break free by twisting Lowe's wrist. According to the testimony of Davis and a customer, Celia Cintron, Lowe ended up on the ground and defendant began kicking, stomping and punching him. Cintron retrieved a steering wheel club from her vehicle and held it out toward defendant, demanding that he stop. Another customer, Jose Martinez, helped pull defendant back into the store vestibule. The doors on both sides of the vestibule were closed and guarded by Cintron and Martinez. While in the vestibule, defendant continued to struggle with Lowe. The police eventually arrived and defendant was arrested.
During deliberations, the jury sent the trial judge a note, indicating that all jurors agreed that "defendant knowingly used force against" either Davis or Lowe, but one group of jurors believed defendant knowingly used force on Davis but not Lowe, and the other group believed defendant knowingly used force on Lowe but not Davis. The jury asked whether this constituted "a unanimous vote." After hearing counsel's views, the trial judge instructed the jury that they were unanimous as to whether defendant knowingly used force. Ten minutes later, the jury returned its guilty verdict. Defendant argues that this instruction was erroneous since it permitted the jury to render a guilty verdict when it had expressed a disagreement as to what defendant actually did in committing the offense.
Our Supreme Court has held that the "unanimity principle is deeply ingrained in our jurisprudence." State v. Frisby, supra, 174 N.J. at 596, 811 A.2d 414. Article I, paragraph 9 of the New Jersey Constitution "presupposes a requirement of a unanimous jury verdict in criminal cases," State v. Parker, 124 N.J. 628, 633, 592 A.2d 228 (1991), cert. denied, 503 U.S. 939, 112 S.Ct. 1483, 117 L.Ed.2d 625 (1992), and R. 1:8-9 requires that the "verdict shall be unanimous in all criminal actions." The Supreme Court has determined that jury instructions regarding the unanimity requirement instills in the jury "the necessity of reaching a subjective state of certitude on the facts in issue." State v. Parker, supra, 124 N.J. at 633, 592 A.2d 228 (quoting Gipson, supra, 553 F.2d at 457).
Stating the importance of this principle, however, is only the starting point in a given case. As the Court said in Frisby, "[a]lthough the need for juror unanimity is obvious, exactly how it plays out in individual cases is more complicated." 174 N.J. *679 at 596, 811 A.2d 414; see also Gipson, supra, 553 F.2d at 456 ("Although a federal defendant's right to a unanimous jury verdict is clear, the scope of that right, unfortunately, is not.").
Jury unanimity problems arise in various ways. Some criminal statutes may create a potential for the lack of unanimity because they group conceptually-different, multiple acts as a single crime. Unanimity problems may also arise when an indictment charges multiple factual occurrences, any of which may be sufficient to support a conviction. And a third category, presented here, occurs when jurors disagree on a specific fact; in such a circumstance, the court must determine whether the disputed fact is material or merely trivial.
Gipson presents the most noteworthy example of the first category. In Gipson, defendant was charged with violating 18 U.S.C.A. § 2313, which prohibits the receiving, concealing, storing, bartering, selling or disposing of stolen vehicles. After an hour of deliberation, the jury asked for additional instructions, which the judge interpreted as revealing a potential division among jurors:
[T]he jury is really asking ... must there be an agreement by all twelve jurors as to which act of those several charged in Count Two, that the defendant did. For example, would it be possible for one juror to believe that the [d]efendant had stored property, and another juror to believe that he had received property, and so on. If all twelve agreed that he had done some one of those acts, but there was not agreement that he had done the same act, would that support a conviction?
[553 F.2d at 455-56.]
The trial judge affirmatively answered this question for the jury, but the Court of Appeals reversed, concluding that this instruction had the potential to authorize a conviction without jury unanimity because the statute grouped two conceptually-distinct types of actus reus elements into a single offense:
The district court's challenged instruction authorized the jury to return a guilty verdict despite the fact that some jurors may have believed that Gipson engaged in conduct only characterizable as receiving, concealing, or storing while other jurors were convinced that he committed acts only constituting bartering, selling, or disposing. Thus, under the instruction, the jury was permitted to convict Gipson even though there may have been significant disagreement among the jurors as to what he did. The instruction was therefore violative of Gipson's right to a unanimous jury verdict.
[Id. at 458-59.]
See also State v. Bzura, 261 N.J.Super. 602, 612, 619 A.2d 647 (App.Div.), certif. denied, 133 N.J. 443, 627 A.2d 1147 (1993) (Defendant was charged with violating N.J.S.A. 2C:28-2, which prohibited two types of false swearing offenses; because the statute proscribed "different offenses," the absence of a specific unanimity charge permitted individual jurors to reach a guilty verdict without necessarily agreeing on which of the different offenses had been violated).
The second category arises when a defendant is charged with an offense based upon multiple predicate acts which may be similar, but separated by time or other factors, or when based upon conceptually different, alternate factual theories. Frisby and Parker provide considerable guidance when the potential for such a "patchwork" verdict is presented.
Parker involved a claim that defendant, a teacher of perceptually-impaired children between the ages of ten and twelve, over a *680 course of time, and in a variety of ways, had shown pornography to her students, informed them of her sexual desires, used foul language, and engaged in other similar conduct. In a prosecution for official misconduct, pursuant to N.J.S.A. 2C:30-2(a),[2] the Court viewed these allegations as "conceptually similar" and, therefore, did not require specific unanimity instructions despite the potential that jurors may have been divided as to which parts of this pastiche of acts defendant may have committed. 124 N.J. at 639, 592 A.2d 228.
Parker, however, must be contrasted with Frisby, where defendant was charged with endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4(a),[3] regarding the death of her child, Ma'D. The State pursued alternate theories: "(1) that she actually inflicted the injuries on Ma'D or failed to supervise him adequately thus resulting in his injury and (2) that she abandoned him." 174 N.J. at 591, 811 A.2d 414. The Court concluded that the judge was required to provide a specific unanimity charge because:
Different theories were advanced based on different acts and entirely different evidence. In one scenario, Frisby was present and inflicted the injuries on Ma'D or allowed him to be injured. In the other, she went out and left him alone. Those are unlike the facts deemed cognate in Parker, supra... [,] [n]or are they like the facts in State v. T.C., 347 N.J.Super. 219, 789 A.2d 173 (App.Div.2002)[,] [certif. denied, 177 N.J. 222, 827 A.2d 289 (2003) ] ... where the Appellate Division held that different sadistic acts toward a child victim including hitting, verbal abuse, starvation, and humiliation did not require a specific unanimity charge because there was a single theory of ongoing emotional and physical abuse advanced and the acts alleged were conceptually similar.
[Id. at 599-600, 811 A.2d 414.]
Because of the potential for lack of unanimity in multiple predicate or alternate theory cases, the Frisby Court cautioned that trial courts "should remain alert to the necessity of tailoring jury instructions to the facts and of utilizing a specific unanimity charge in any case in which the danger of a fragmented verdict is even reasonably debatable." Id. at 600, 811 A.2d 414.
In the case at hand, however, defendant was not charged with violating a statute which encompassed conceptually-different offenses, as in Gipson and Bzura, or with having committed multiple acts over the course of time which formed a factual predicate for the offense, as in Parker, or with having committed an offense in mutually-exclusive ways, as in Frisby. Instead, the jury's factual disagreement, described in its note to the trial judge, requires our determination of the level of significance which a particular disputed fact must possess in order to jeopardize the constitutional requirement of jury unanimity.
In defining the types of facts upon which juries must be unanimous, courts have provided various general statements. In In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368, 375 (1970), the Court held that the requirements of due process protect an accused against conviction *681 except upon proof beyond a reasonable doubt "of every fact necessary to constitute the crime with which he is charged." Because of the constitutional link between the reasonable doubt standard and the requirement of jury unanimity, see Parker, supra, 124 N.J. at 633, 592 A.2d 228, Winship's description of the facts which must be proven beyond a reasonable doubt would bear considerable weight in determining the scope of jury unanimity as to what the defendant actually did. In a concurring opinion, cited with approval both in the plurality opinion in Schad v. Arizona, 501 U.S. 624, 631-32, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555, 565 (1991) and in Parker, supra, 124 N.J. at 633, 592 A.2d 228, Justice Blackmun described the converse of Winship, stating that "[p]lainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." McKoy v. North Carolina, 494 U.S. 433, 449, 110 S.Ct. 1227, 1236-37, 108 L.Ed.2d 369, 385 (1990). In Frisby, our Supreme Court made reference to Gipson's announcement of a constitutional requirement that juries reach a "subjective state of certitude on the facts in issue," 174 N.J. at 596, 811 A.2d 414 (quoting Gipson, supra, 553 F.2d at 457), without indicating that Gipson's statement represents the precise constitutional parameters of such an inquiry. See also State v. Camacho, 153 N.J. 54, 78, 707 A.2d 455 (1998) (O'Hern, J., dissenting) ("A jury need not always agree unanimously on every fact that establishes the essential elements of an offense.").
We discern from these authorities a constitutional requirement that juries be unanimous as to material facts that is, the ultimate facts which form the bases for the elements of the offense charged. The scope of those facts material in this setting is illuminated by the Legislature's description of the "element[s] of an offense"; as is relevant to the case at hand, the material facts, upon which jurors must unanimously agree, include "such conduct or ... such attendant circumstances or ... such a result of conduct as [i]s included in the description of the forbidden conduct in the definition of the offense," as well as "the required kind of culpability." N.J.S.A. 2C:1-14(h). For example, the elements of the offense of robbery charged in this case would, thus, include proof that a person, "in the course of committing a theft ... [i]nflicts bodily injury or uses force upon another ... or... [t]hreatens another with or purposely puts [another] in fear of immediate bodily injury." N.J.S.A. 2C:15-1(a). We thus conclude that those facts which are material and upon which a jury must be unanimous, are those ultimate facts which are directly linked to the elements of the offense.
In so defining the scope of material facts to which a jury must be unanimous, we hasten to emphasize that our Constitution does not require that a criminal jury, to convict, must possess a shared, detailed vision of what factually occurred. Instead, our Constitution expects only that there be agreement as to the offense's principal factual elements as amplified by the particular statute charged. This, however, "does not require that each bit of evidence be unanimously credited or entirely discarded but it does require unanimous agreement as to the nature of the defendant's violation, not simply the fact that a violation occurred." McKoy v. North Carolina, supra, 494 U.S. at 449 n. 5, 110 S.Ct. at 1237 n. 5, 108 L.Ed.2d at 385 n. 5; see also Craddock v. State, 64 Md.App. 269, 494 A. 2d 971, 975 (Jurors are not required "to uniformly accept all of the evidence presented in order to arrive at a unanimous verdict. Some jurors unquestionably reject evidence that others accept in determining *682 guilt or innocence."), cert. denied, 304 Md. 297, 498 A.2d 1184 (1985).
Accordingly, while each detail in the State's case need not be embraced by a jury, in order to promote confidence in the unanimity of a jury's verdict and the fairness of the trial, we must insist that the jury has unanimously agreed on all the elements of the offense in question. We recognize this statement provides little more than a general guideline in considering the significance of jury discord on a particular fact. But a perfect model upon which all cases may be judged is more than the law may often provide. See Palermo v. United States, 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959). A determination as to what facts are material can best be determined only on a case-by-case basis, with the understanding that, at times, "only common sense and intuition can define the specificity with which the jury must describe the defendant's conduct before it may convict." Note, Right to Jury Unanimity on Material Fact Issues: United States v. Gipson, 91 Harv.L.Rev. 499, 502 (1977).
An understanding of the materiality expected is best understood by the consideration of similar examples. In his dissenting opinion in Schad, Justice White suggested that common sense would dictate that, in considering a burglary charge, it would be immaterial if a jury did not concur in "whether a defendant pried open a window with a screwdriver or a crowbar," so long as the jury unanimously agreed that defendant had "broke and entered" the premises. 501 U.S. at 656-57, 111 S.Ct. at 2510, 115 L.Ed.2d at 581. An equally inconsequential disagreement among jurors would occur if a defendant was charged with an assault, with one eyewitness testifying that defendant struck the victim with a dark-colored pistol and another testifying that defendant struck the victim with a blackjack. Even if the jurors disagreed on what weapon was used, it would be sufficient that they all agreed defendant committed an act which constituted an assault. Scott W. Howe, Jury Fact-Finding in Criminal Cases: Constitutional Limits on Factual Disagreements Among Convicting Jurors, 58 Mo. L.Rev. 1, 23-24 (1993).
The lack of juror concurrence also will be deemed immaterial if doubt about one factual event or circumstance suggests only that an alternate basis for guilt is true. Thus, in the case at hand, if some jurors could not agree on whether force was actually used but all agreed force was threatened within the meaning of N.J.S.A. 2C:15-1(a)(2), then the lack of unanimity about the actual use of force would mean that its verdict on the robbery charge was unanimous since the threat of force was statutorily sufficient. In a similar vein, in United States v. Peterson, 768 F.2d 64, 67-68 (2d Cir.), cert. denied, 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985), the court held that a jury need not unanimously agree whether a defendant's role was that of a principal or an accomplice. See also United States v. Horton, 921 F.2d 540, 545-46 (4th Cir.1990), cert. denied, 501 U.S. 1234, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991); State v. Johnson, 46 Ohio St.3d 96, 545 N.E.2d 636, 645 (1989), cert. denied, 494 U.S. 1039, 110 S.Ct. 1504, 108 L.Ed.2d 639 (1990); State v. Jones, 193 Conn. 70, 475 A.2d 1087, 1091-92 (1984).
These examples should not, however, lead to an assumption that any ostensibly small detail about an offense is immaterial in detecting whether a jury is unanimous to the extent constitutionally required. Extrapolating from the assault hypothetical mentioned earlier provides an example of when the identical fact, viewed as immaterial in one set of circumstances, takes on critical importance in another setting. For *683 instance, if a statute, prohibiting the carrying of a concealed weapon, only defined "weapon" as including "guns" and "knives," then a jury's inability to agree on whether defendant carried in his pocket a dark-colored gun or a blackjack would be material. In that way, the level of factual unanimity not required in one case becomes imperative in another.
Turning to the case at hand, we observe that the indictment charged defendant with purposely threatening with immediate bodily injury or knowingly inflicting bodily injury upon "Tiffany Davis and/or David Lowe" while committing a theft. The special interrogatory provided to the jury for purposes of rendering their verdict also couched the question to be decided in the same way. The jury's deliberations, as their later note to the judge reveals, progressed to a point where every juror agreed that defendant used force while committing a theft. However, the jurors did not agree as to whom the force was used against. Notwithstanding this factual disagreement, the judge advised the jurors that they were unanimous on that point.
We conclude that the trial judge correctly instructed the jurors when they questioned whether they were unanimous. As the deliberations distilled to a dispute about which of two persons was the victim of defendant's use of force, the jurors found themselves disagreeing about a fact which we view, in these circumstances, as immaterial. Since the jury was unanimous that force was used, and that it was used on "another," the elements of the robbery charge were unanimously resolved. Our earlier analysis of the elements of the offense of robbery, as charged here, reveals that the statutory emphasis is on the use or threat of use of force on "another," not on the specific identity of the person so victimized.
Affirmed.
COBURN, J.A.D., dissenting.
Although I accept the majority's statement of facts, I do not agree with its conclusion of law. Since I believe the trial court erred in refusing to give a specific unanimity instruction, I respectfully dissent.
The robbery statute, in relevant part, elevates theft to robbery if during the course of the theft the defendant "[i]nflicts bodily injury or uses force upon another...." N.J.S.A. 2C:15-1a(1) (emphasis added). The case was tried on the theory that in the course of committing a theft upon Rite Aid, defendant inflicted "bodily injury or use[d] force upon David Lowe and/or Tiffany Davis." The contact with Davis and Lowe occurred at different times and in different places: in an aisle of the store for Davis, and a few moments later in the store's vestibule and then outside the store for Lowe.
During deliberations the jury found that it could not agree on who was the victim of defendant's use of force. Concerned about the requirement that it reach a unanimous verdict, the jury put this question to the judge:
A, one group think evidence of knowingly using force on Miss Davis but not Mr. Lowe. B, one group think evidence of knowingly using force on Mr. Lowe but not Miss Davis. Does this meet a unanimous vote? All members of jury would argue defendant knowingly used force against one or the other but not necessarily both.
Over defendant's strenuous objection, the trial judge charged the jury as follows:
Provided that the culpable element of force with the knowingly being the culpable *684 element, that, provided that the defendant knowingly inflicted bodily injury or used force, then as long as the victims are either Mr. Lowe or Miss Davis and the jury unanimously agrees that the force that was used is the culpable element of knowing and that it was upon one or the other or both, there is no need for unanimity as to each specific individual but it is important you be unanimous as to the culpable knowingly element and that it be force and that it be directed only as to those individuals. If that has been the extent of your deliberations, then the answer to your question is it does meet a unanimous vote in regard to that aspect of the case.
In State v. Parker, 124 N.J. 628, 592 A.2d 228 (1991), cert. denied, 503 U.S. 939, 112 S.Ct. 1483, 117 L.Ed.2d 625 (1992), the Court endorsed the view that when "a conviction may occur as the result of different jurors concluding that defendant committed different acts, the general unanimity instruction does not suffice." Id. at 636, 592 A.2d 228 (internal quotes and citations omitted). Referring to such verdicts as "patchwork" or "fragmented," the Court also endorsed the statement that when "there is a danger of a fragmented verdict the trial court must upon request offer a specific unanimity instruction." Id. at 637, 592 A.2d 228 (internal quotes and citations omitted).
The necessity for a specific unanimity instruction arises, too, when the jury poses a question to the court showing "their confusion regarding the unanimity issue." Id. at 639, 592 A.2d 228. One of the examples given in Parker was a jury's request, in a case involving false statements on a tax return, "for clarification concerning whether it had to agree on which statement defendant knew to be false...." Id. at 640, 592 A.2d 228. The Court said that the question "manifested a tangible risk of jury confusion[.]" Ibid.
And in State v. Frisby, 174 N.J. 583, 600, 811 A.2d 414 (2002), the Court said:
To be sure, if a jury affirmatively evidences "confusion" by its questions ..., that would be an important factor in determining whether the absence of a specific unanimity charge caused defendant to be prejudiced.
The Court also held that "[t]he notion of unanimity requires jurors to be in substantial agreement as to just what a defendant did before determining his or her guilt or innocence." Id. at 596, 811 A.2d 414 (internal quotes and citation omitted). While the jury need not agree on preliminary factual issues, Parker, supra, 124 N.J. at 633, 592 A.2d 228, "the unanimous jury requirement impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue." Ibid. (internal quotes and citations omitted).
In this case, the critical fact in issue was not simply whether defendant used force; rather, it was whether he used force against another, as is required by N.J.S.A. 2C:15-1a(1). From the jury's question, I infer that had Lowe not been present, the jury would have been unable to agree that force had been used against Davis. Similarly, I infer that had Davis not been present, the jury would have been unable to agree that force had been used against Lowe. Thus, in either of those circumstances, there would have been no conviction for robbery. In the actual circumstances, with both Lowe and Davis present but involved in separate confrontations with defendant, I believe, as a matter of "common sense and intuition[,]" Note, Right to Jury Unanimity on Material Fact Issues: United States v. Gipson, 91 Harv. L.Rev. 499, 502 (1977), that the principle of unanimity required that the jury *685 agree that force had been used on at least one and the same victim.
At one point, the majority compares this case to two situations, a burglary case in which a jury would not have to be unanimous about the nature of the tool used to pry open a window, and an assault case in which a jury would not have to be unanimous about the nature of the weapon used to strike the victim. Op. at 423, 851 A.2d at 682. Those strike me as clear examples of preliminary factual issues. By contrast, the use of force on another is not a preliminary issue; it is the critical element of the offense.
I cannot agree with the majority's statement that the deliberations had "progressed to a point where every juror agreed that defendant used force while committing a theft." Op. at 425, 851 A.2d at 683. Rather, I see this case as closer to Frisby, supra, which the Court described as follows: "In one scenario, Frisby was present and inflicted the injuries on [the child victim] or allowed him to be injured. In the other, she went out and left him alone." 174 N.J. at 599, 811 A.2d 414. The Court held that a specific unanimity charge was required because "[d]ifferent theories were advanced based on different acts and entirely different evidence." Ibid.
It is also closer to the example given in Parker, supra, of the necessity for a specific unanimity charge in response to a jury's inquiry about whether it had to agree on which statement in a tax return was knowingly false. 124 N.J. at 640, 592 A.2d 228. While it might be said that the theory of use of force as the elevating factor was the same in the instant case as to both victims, that theory was based on different acts and different evidence. Therefore, under Parker and Frisby, although the jury did not have to agree on the particular force used against a victim, it did have to agree that force was used against at least one and the same victim.
Since defendant admitted the theft charge, a judgment could be entered on that lesser included, disorderly persons offense, State v. Moore, 330 N.J.Super. 535, 540-45, 750 A.2d 171 (App.Div.), certif. denied, 165 N.J. 531, 760 A.2d 784 (2000), but I would reverse the robbery conviction and remand that charge for a new trial.
NOTES
[1] Judge Coburn did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] "A public servant is guilty of official misconduct when, with purpose ... to injure ... commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner."
[3] "Any person having a legal duty for the care of a child ... who causes the child harm that would make the child an abused or neglected child ... is guilty of a crime of the second degree."