# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2825-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

D.C.,

    Defendant-Appellant.

_____

Argued May 2, 2017 — Decided June 19, 2017

Before Judges Koblitz, Rothstadt and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 12-04-0882.

Peter Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Mr. Blum, on the brief).

William Kyle Meighan, Senior Assistant Prosecutor, argued the cause for respondent (Joseph D. Coronato, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; Mr. Meighan, on the brief).

PER CURIAM

Defendants D.C. and M.E.D.[1] were convicted at separate jury trials of crimes connected with sexual assaults against M.E.D.'s younger sister, K.B. The two defendants were sexually involved with each other at the time of the assaults. Both gave videotaped confessions to at least some of the activity. Although both were charged with three separate incidents in Lakewood, D.C. was convicted of only one while M.E.D. was convicted of all. D.C. was sentenced to an aggregate term of fifteen years in prison with an eighty-five percent parole disqualifier pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. After considering the issues raised on appeal, we reverse D.C.'s conviction due to the lack of specificity of the verdict and due to double jeopardy concerns, we remand for the entry of an order dismissing the indictment as to D.C.

K.B. testified to the following. At the time of trial, K.B. was sixteen years old. In the summer of 2010, K.B. was twelve years old and lived with her "surrogate grandmother" in Jackson. During that time, K.B. visited her sister M.E.D., who was about thirteen years older, in Lakewood once or twice a week, sometimes on the weekend and during school breaks. She said, "I was very,

---

[1] We use initials to preserve the confidentiality of the victim. R. 1:38-3(c)(12).

very close to [M.E.D.] at the time.  She was more of a mother than my own . . . ."

While visiting M.E.D., K.B. met D.C., M.E.D.'s thirty-year-old boyfriend.  During one visit, D.C. and M.E.D. began drinking alcohol and shared it with K.B.  D.C. touched K.B.'s crotch over her clothes.  Interactions between D.C. and K.B. became more sexual.  The first time D.C. engaged in sexual intercourse with K.B. was in the car in a "secluded parking lot" in Pine Park in Lakewood.  Thereafter, D.C. would pick K.B. up from her residence at her grandmother's house and bring her back to M.E.D.'s apartment in Lakewood, where they would have sexual intercourse when M.E.D. was not home.

K.B. also became involved in the sexual activity between D.C. and M.E.D. on three occasions at M.E.D.'s Lakewood apartment.  The first sexual encounter between D.C., M.E.D. and K.B. lasted an hour and was at M.E.D.'s house.  D.C. and M.E.D. began having sexual intercourse on the bed while K.B. sat in a chair facing the bed and watched.  D.C. and M.E.D. instructed K.B. to take her pants off and insert her fingers into her vagina while they had intercourse.  K.B. followed their directions.  K.B. said, "I went with it because they told me to and I believed what they said was good."

K.B. joined D.C. and M.E.D. in the bed during the second and third group sexual encounters she had with them. During those encounters, D.C. and M.E.D. engaged in anal intercourse. They gave K.B. a sex toy, commonly referred to as a "rabbit" that was "a dildo as well as a vibrator" to use on herself. D.C. and M.E.D. instructed K.B. to insert the sex toy into her vagina. K.B. complied. While M.E.D. held K.B.'s legs open, D.C. inserted the sex toy into K.B.'s vagina and rubbed and touched her with it. K.B. also testified that she and M.E.D. took turns performing oral sex on D.C.

After that, in the late summer and fall of 2010, K.B. had vaginal intercourse with D.C. outside of M.E.D.'s presence "three [or] four times" while in Jackson. The encounters occurred in D.C.'s car, while parked close to "Dunkin' Donuts" in a lot near the apartment complex where K.B. lived with her grandmother.

D.C. and M.E.D. told K.B. that she was not allowed to tell anyone about the sexual encounters or they would stop seeing or speaking to her. K.B. testified that she agreed to not disclose the activities because "[she] loved them. They were [her] only stability at the time." K.B. nevertheless told her best friend and her mother. K.B. testified that her mother "completely disregarded it and shot [her] down," accusing K.B. of lying.

A-2825-14T4

In February 2012, a Division of Child Protection and Permanency (Division) worker visited K.B.'s school to speak with K.B. about an unrelated matter. During their meeting, K.B. disclosed "that she had been raped multiple times by her sister's boyfriend." The worker contacted the police. K.B. testified she told the caseworker, "more out of desperation to get away from my mother at the time. I just wanted to get everything out that had ever happened to me, and that's how everything came out."

D.C. admitted on videotape that he had a sexual encounter with K.B. on one occasion. He admitted having intercourse with M.E.D. on the bed while K.B. used a vibrator next to them. D.C. stated that he held the vibrator and showed K.B. how to use it by touching K.B.'s vaginal area with it. D.C. initially denied inserting the vibrator into K.B.'s vagina, but later admitted that he did.

D.C. stated that K.B. put her mouth on his penis, but she did not perform oral sex on him. He denied having vaginal sex with K.B. D.C. told the detectives he had only one sexual encounter with K.B and M.E.D.

D.C. was charged in three identical counts with committing first-degree aggravated sexual assault against K.B. when she was under thirteen years old, between June and August 2010 in Lakewood, N.J.S.A. 2C:14-2(a)(1) (counts one through three). Counts six

through eight charged defendant with three identical counts of second-degree sexual assault against K.B. between June and August 2010 in Lakewood, N.J.S.A. 2C:14-2(b). Counts fourteen through sixteen charged D.C. with three identical counts of third-degree endangering the welfare of K.B. between June and August 2010 in Lakewood, and counts seventeen through nineteen charged D.C. with three identical counts of third-degree endangering the welfare of K.B. between September and October 2010 in Jackson, N.J.S.A. 2C:24-4(a). In counts twenty through twenty-two, D.C. was charged with three identical counts of first-degree aggravated sexual assault against K.B. between September and October 2010 in Jackson, N.J.S.A. 2C:14-2(a)(1). The counts in the indictment did not particularize the behavior charged beyond the town where it occurred and range of dates, nor did the court's instruction or the verdict sheet add specificity to the charges.

Defense counsel argued in summation that K.B. was not credible. The State responded in its summation by exhorting the jury to vindicate K.B. Neither attorney discussed the charges with specificity.

D.C. was convicted only of counts one, four and seven: between June and August 2010 in Lakewood, on one occasion, committing the crimes of aggravated sexual assault, sexual assault and endangering the welfare of a child against K.B. The jury acquitted

defendant on the other nineteen counts of the indictment, including all of the sexual conduct that K.B. alleged occurred in Jackson.

D.C. raises the following issue on appeal:

> POINT ONE: A NEW TRIAL SHOULD BE GRANTED BECAUSE DC'S RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WAS VIOLATED WHEN THE JURY WAS SHOWN THE VIDEO OF A DETECTIVE TELLING DC ABOUT THE NON-TESTIFYING CO-DEFENDANT'S STATEMENT INCRIMINATING HIM. U.S. CONST. AMEND. VI, XIV; N.J. CONST. ART. I, PARA. 10. (not raised below)

> POINT TWO: DC WAS DEPRIVED OF DUE PROCESS AND THE CERTAINTY OF A UNANIMOUS VERDICT BECAUSE THE COURT FAILED TO INSTRUCT THE JURY TO FIND, BEFORE CONVICTING, THAT DC COMMITTED A SPECIFIC ONE OF THE VARIOUS SEXUAL ACTS ALLEGED. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, PARAS. 1, 9, 10. (not raised below)

> POINT THREE: A NEW SENTENCE SHOULD OCCUR BECAUSE THE COURT FAILED TO EXPLAIN WHY IT FOUND AGGRAVATING FACTOR NINE (NEED FOR DETERRENCE) AND WHY IT PLACED "MAXIMUM WEIGHT" ON THAT FACTOR.

In Point Two, D.C. argues that he was deprived of his due process right to a unanimous jury verdict because of the lack of specificity in the counts of the indictment, verdict sheet and charge to the jury. Because defense counsel did not object to the jury charge, defendant must demonstrate plain error, i.e., that the error was "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Macon, 57 N.J. 325, 337 (1971). Under that standard, "Reversal of defendant's conviction is required

7

only if there was error 'sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached.'"  State v. Atwater, 400 N.J. Super. 319, 336 (App. Div. 2008) (quoting State v. Daniels, 182 N.J. 80, 95 (2004)); see also Macon, supra, 57 N.J. at 333; R. 2:10-2.

"Clear and correct jury instructions are essential for a fair trial."  State v. Randolph, 441 N.J. Super. 533, 558 (App. Div. 2015) (quoting State v. Brown, 138 N.J. 481, 522 (1994)), aff'd by, ___ N.J. ___.  "'[E]rroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant."  State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).  The plain error analysis of an erroneous jury charge mandates that the reviewing court examine the charge as a whole to determine its overall effect.  State v. McKinney, 223 N.J. 475, 494 (2015).

The court gave the jury the following instruction about the separate counts in the indictment:

> The defendant, [D.C.], is charged with various offenses in 15 counts of the indictment.  They are separate offenses, alleged by separate counts in the indictment.  In your determination of whether the State has proven the defendant guilty of the crimes charged in the indictment beyond a reasonable doubt, the defendant is entitled to have each count considered separately by the evidence which is relevant and material to that particular charge based on the law as I will give you.

The court then gave the jury the following instruction about the requirement of a unanimous verdict:

> Now, ladies and gentlemen of the jury, your verdicts must be unanimous. In order to return a verdict on a particular count, or in order to answer any other question of the verdict sheet, it is necessary that each juror, that all 12 of you agree thereto.

During deliberations, the jury sent a note to the court asking: "Do the multiple counts mean separate acts or separate incidents?" The court responded:

> I have discussed this with counsel and in trying to answer your question, I'm going to try to answer it briefly. If you have any further questions about that, you know, please let me know.
>
> The multiple acts that you're speaking of in the question, multiple acts mean three separate acts that occurred in Lakewood and three separate acts that occurred in Jackson. The three sexual assault charges and the three endangering charges refer to those above incidents that occurred, allegedly occurred both in Lakewood and in Jackson.

D.C. admitted in his videotaped statement to having sexual contact with K.B. using a vibrator, which she testified happened both the second and the third time they engaged in sexual activity in Lakewood. Nonetheless, the jury convicted D.C. of the first count alleging aggravated sexual assault. Thus, if the jury intended to convict D.C. of only what he admitted to, and if the jury believed the counts were ordered chronologically, it is

curious that the jury did not convict him of the second or third charge of aggravated sexual assault. In any event, it is pointless to engage in speculation. Because neither the indictment nor the verdict sheet specified any facts distinguishing the incidents, it was not clear for which incident the jury found defendant guilty beyond a reasonable doubt, or if the jury agreed unanimously on which assault D.C. committed. If the jurors agreed that one of the incidents occurred, but disagreed as to which one, the jury had the obligation to consider each charge separately and acquit on each charge if it could not reach a unanimous guilty verdict on any one charge.

The court never told the jury what specific acts were connected with which charges in the indictment. The verdict sheet did not distinguish at all between the identically-worded counts. Thus the jury was left on its own to decide which count applied to what behavior. The danger thus existed that the jurors were not unanimous in finding guilt on one particular incident. That is, some of the jurors may have thought defendant committed the first assault K.B. related, and others thought he committed the second or third.

"[A]ny double jeopardy concerns, or issues of non-unanimous guilty verdicts, may be addressed with carefully tailored jury instructions, a detailed verdict sheet or both." State v. Salter,

425 <u>N.J. Super.</u> 504, 516 (App. Div. 2012). "Courts should remain alert to the necessity of tailoring jury instructions to the facts and of utilizing a specific unanimity charge in any case in which the danger of a fragmented verdict is even reasonably debatable." <u>State v. Frisby</u>, 174 <u>N.J.</u> 583, 600 (2002); <u>see also</u> <u>State v. Parker</u>, 124 <u>N.J.</u> 628, 637 (1991), <u>cert. denied</u>, 503 <u>U.S.</u> 939, 112 <u>S. Ct.</u> 1483, 117 <u>L. Ed.</u> 2d 625 (1992). "The necessity for a specific unanimity instruction arises, too, when the jury poses a question to the court showing 'their confusion regarding the unanimity issue.'" <u>State v. Gentry</u>, 370 <u>N.J. Super.</u> 413, 426 (App. Div. 2004) (Coburn, J., dissenting) (quoting <u>Parker</u>, <u>supra</u>, 124 <u>N.J.</u> at 639), <u>rev'd on dissent</u>, 183 <u>N.J.</u> 30 (2005) (reversing defendant's robbery conviction and finding that the trial court erred in concluding that the jury had reached a unanimous decision when during deliberations, the jury sent a note indicating that all jurors agreed that the defendant used force but were divided about which victim force was used against). "Additionally, pursuant to <u>Rule</u> 3:7-5, the judge may, sua sponte or upon defendant's request, order the State to furnish a bill of particulars." <u>Salter</u>, <u>supra</u>, 425 <u>N.J. Super.</u> at 516.

In <u>Salter</u>, the grand jury returned a seven-count indictment against defendant for crimes related to the sexual assault of a minor. <u>Id.</u> at 509. In identical language, counts three and four

charged defendant with first-degree aggravated sexual assault by oral penetration "on or about the 2nd day . . . and the 5th day of September[] 2006." Id. at 509. "Neither the jury instructions nor the verdict sheet isolated which incident corresponded to each count." Id. at 521. The jury found defendant not guilty of count three and guilty of count four. Id. at 512. We affirmed the dismissal of count four of the indictment, in spite of the conviction on that count, noting that "it has long been recognized that 'the language of [the indictment] must be sufficiently detailed to avoid the risk of double jeopardy, successive prosecutions for the same transgression.'" Id. at 522 (quoting State v. Wein, 80 N.J. 491, 497 (1979)). We found that retrial on count four would amount to double jeopardy as defendant would be prosecuted for the same offense, count three, for which he was acquitted. Id. at 522. We reasoned that the not guilty verdict on count three did not serve to eliminate any specific alleged criminal conduct from the jury's consideration on retrial. Id. at 521. Therefore, "all of defendant's alleged conduct can serve as the basis for sexual assault by oral penetration in count four." Ibid.

Here, although no request for such a charge was made, the failure to explain to the jury by way of indictment, verdict sheet or jury charge which count related to which activity that occurred

in Lakewood was a fatal defect in the proceedings. The jury should have been tasked with determining which, if any, incidents were proven, with the assistance of a charging document or verdict sheet that distinguished factually and specifically among the three counts charged.

When considering whether we should remand for a retrial, the difficulty in determining what the jury intended to acquit defendant of became apparent. Of course, defendant cannot be tried again for the behavior encompassed by the not guilty verdicts. Unfortunately, we can discern no way of determining what behavior was encompassed by those counts, except to say D.C. was clearly acquitted of all behavior alleged to have occurred in Jackson: counts seventeen through twenty-one. But as to the behavior in Lakewood between June and August 2010 we can only say that he was acquitted of some allegations and convicted of others. Defendant cannot constitutionally be required to stand trial again for a charge after an acquittal. N.J. Const. art. I, ¶ 11; Salter, supra, 425 N.J. Super. at 515-16.

Given the seriousness of the charges for which defendant was convicted, the decision to dismiss the indictment without a retrial is not made lightly. Unfortunately, the failure in the charging document, verdict sheet and jury charge mandates this result. We need not consider the other points raised by D.C. on appeal.

Reversed and remanded for the entry of an order dismissing the indictment against defendant with prejudice.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION