# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2357-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOEL A. RODRIGUEZ,

    Defendant-Appellant.

_____

Submitted January 20, 2021 – Decided February 12, 2021

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-02-0117.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (William P. Cooper-Daub, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant was convicted, at the conclusion of a jury trial, of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), which prohibits a person "having a legal duty for the care of a child or who has assumed responsibility for the care of a child" from engaging in "sexual conduct" that "would impair or debauch the morals of the child." He was acquitted of first-degree aggravated sexual assault and second-degree sexual assault, charges that were based on the same conduct that formed the basis for the child-endangerment conviction.

The alleged victim was A.K.D. (Alice, a fictitious name), who, at the time in question, was the ten-year-old daughter of defendant's girlfriend. Defendant argues: the motion judge erroneously admitted Alice's out-of-court statements; the trial judge erred by failing to charge the jury more specifically about its need to reach a unanimous finding concerning the particular "sexual conduct" it might find in deciding the child-endangerment count; the trial judge should have downgraded the second-degree conviction to the third-degree range, claiming the judge failed to apply other mitigating factors and should have concluded that the mitigating factors substantially outweighed the aggravating factors; the judge erroneously imposed a sex crime victim treatment fund penalty without determining defendant's ability to pay; and the judge "imposed an illegal certain

2

sexual offenders surcharge" under N.J.S.A. 2C:43-3.7. We reject the first three arguments but, as the State also recognizes, mistakes were made about the monetary aspects of the sentence that require a remand for further proceedings and entry of an amended judgment of conviction.

In February 2017, defendant was charged with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), second-degree sexual assault, N.J.S.A. 2C:14-2(b), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1),[1] alleged to have occurred at various dates between September 20, 2015, and September 1, 2016, when Alice was ten years old.

In June 2017, Judge Mitzy Galis-Menendez conducted a hearing at which she reviewed the recorded statement Alice gave to police and denied defendant's motion to exclude that statement under N.J.R.E. 803(c)(27). The following month, after hearing testimony from V.B. (Vicki, a fictitious name),[2] to whom Alice spoke about the events alleged in the indictment, the judge determined those statements could also be admitted at trial under N.J.R.E. 803(c)(27).

---

[1] A fourth count, charging fourth-degree child abuse, N.J.S.A. 9:6-1 and 9:6-3, was dismissed prior to trial.

[2] Vicki is five years older than Alice. They have the same father.

A seven-day trial took place in February 2018. At its conclusion, the jury acquitted defendant of aggravated sexual assault and sexual assault but convicted him of child endangerment. Defendant later moved for a judgment of acquittal, arguing that the acquittal on the other counts precluded a conviction of child endangerment. The trial judge denied that motion for reasons expressed in a written opinion.

Defendant was sentenced on December 11, 2018. The judge rejected defendant's request to be sentenced as a third-degree offender and imposed a six-year prison term. Among other things, the judge imposed a $100 Certain Sexual Offenders (CSO) surcharge, N.J.S.A. 2C:43-3.7, and a $500 Sex Crime Victim Treatment Fund (SCVTF) penalty, N.J.S.A. 2C:14-10.

Defendant appeals and, as noted above, argues that (1) the motion judge erroneously admitted Alice's statements to police and to Vicki; (2) the trial judge erroneously failed to provide the jury with specific unanimity instructions as to the child endangerment charge; and (3) the trial judge erred in a number of respects when he sentenced defendant.

I

Defendant's first argument about the admissibility of Alice's out-of-court statements is without merit. Judge Galis-Menendez applied the correct

4

standards, and properly exercised her discretion, <u>State v. Scharf</u>, 225 N.J. 547, 575 (2016), in determining that the statements were sufficiently trustworthy to be admitted under the hearsay exception described in N.J.R.E. 803(c)(27).

Hearsay, of course, is "a statement that the declarant does not make while testifying . . . offer[ed] in evidence to prove the truth of the matter asserted in the statement," N.J.R.E. 801(c), and is inadmissible unless the rules provide an exception, N.J.R.E. 802. N.J.R.E. 803(c)(27) allows the admission of a statement made by a child under the age of twelve "relating to sexual misconduct" on a finding of three conditions. The first is the requirement that the proponent give notice of an intention to use the statement, N.J.R.E. 803(c)(27)(a), which was satisfied here. The second requires that the judge conduct a hearing, pursuant to N.J.R.E. 104(a) – as occurred here – and, before admitting such a statement, determines there is a "probability that the statement is trustworthy" "on the basis of the [statement's] time, content and circumstances." N.J.R.E. 803(c)(27)(b). The third requires, as pertinent here, that the child testify. N.J.R.E. 803(c)(27)(c). Alice testified at trial.

In this case, the focus is on the second condition and whether the judge properly concluded that the statements were trustworthy. Defendant argues that

the judge failed to "comprehensively consider the trustworthiness factors enumerated in our jurisprudence."  We disagree.

Our Supreme Court relied on Idaho v. Wright, 497 U.S. 805, 821-22 (1990), in describing the relevant factors as "spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate."  State v. P.S., 202 N.J. 232, 249 (2010); see also State in Interest of A.R., 234 N.J. 82, 103 (2018).  The judge thoroughly considered these factors.

In finding trustworthy Alice's statements to Vicki, the judge described the circumstances, noting that Alice had first spoken to S.B. (Sarah, a fictitious name), Vicki's younger sister.[3]  Vicki recounted how Sarah and Alice came to her with this information.  As the judge explained in her findings, "[o]bviously the information was . . . too much" for Sarah "to handle as she told [Vicki] she didn't know what to do with it."  So, in the company of Alice, Sarah went to Vicki and told Alice to repeat what she had just said to her.  Alice told Vicki that defendant "raped" her.  Vicki then asked Alice what she meant by that; in her testimony at the N.J.R.E. 104(a) hearing, Vicki described this discussion:

> And I said, what do you mean, raped?  And she's like [defendant] touched me in places.  And I was like, like,

_____

[3] Sarah is approximately two years older than Alice.

did he touch you in your private spot and stuff like that? And she was like, yeah, he did everything to me. And then I didn't know what to do, so after I asked her all the questions, I was like, asking her, like, are you sure about this? Are you sure he touched you there? And she's like, yeah, he did everything.

Vicki was asked at the hearing what Alice said when Vicki asked her where she was touched, and responded that Alice said, "wherever you can think of, he touched me." The judge determined there was no suggestiveness, that the words Alice used were words not uncommon for a child of Alice's age, and that there was no apparent motive for Alice to make such an accusation.

Following what Alice divulged, Vicki reached out to her mother, and soon after Alice was interviewed by a police officer. That interview was recorded, and the judge found that it, too, was reliable. The judge concluded the tone of questioning was "very conversational," and the officer did not prompt the child in a way to elicit particular responses. Those findings are entitled to our deference.

For these reasons, and substantially for the reasons set forth by Judge Galis-Menendez in her oral decisions at the conclusion of both N.J.R.E. 104(a) hearings, we reject defendant's first point.

A-2357-18

## II

The judge charged the jury that its verdict had to be unanimous. In his second point, defendant contends that the judge should have more specifically instructed the jury that to convict on the child-endangerment count, they needed to be unanimous on what particular "sexual conduct" formed the basis for the verdict.

An essential ingredient of a fair trial is the judge's obligation to accurately instruct the jury on how to apply the law. State v. Maloney, 216 N.J. 91, 104-05 (2013); State v. Green, 86 N.J. 281, 287 (1981). Rule 1:8-9, which has constitutional underpinnings, see State v. Parker, 124 N.J. 628, 633 (1991), requires that a "verdict shall be unanimous in all criminal actions." As a result, courts must be vigilant in ensuring that guilty verdicts are not rendered on a jury's "patchwork" view but on a "shared" view of the evidence. Id. at 636-37. In this regard the Parker Court recognized that "the unanimous jury requirement 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.'" Id. at 633 (quoting In re Winship, 397 U.S. 358, 364 (1970)).

Normally, the unanimity charge given here, which merely instructed the jurors that they all had to agree on their verdict, will suffice. But a judge must

do more "where there is a danger of a fragmented verdict." State v. Frisby, 174 N.J. 583, 597-98 (2002) (quoting Parker, 124 N.J. at 637). The Supreme Court has provided examples, advising that this danger might arise when:

> (1) a single crime could be proven by different theories supported by different evidence, and there is a reasonable likelihood that all jurors will not unanimously agree that the defendant's guilt was proven by the same theory; (2) the underlying facts are very complex; (3) the allegations of one count are either contradictory or marginally related to each other; (4) the indictment and proof at trial varies; or (5) there is strong evidence of jury confusion.
>
> [State v. Cagno, 211 N.J. 488, 517 (2012) (quoting Parker, 124 N.J. at 635-36).]

We find none of these circumstances were present and there was no concern about a fragmented verdict here.

By way of explanation, a relatively simple example is that of an alleged robbery. To convict a defendant of robbery, a jury must find that the defendant, in the course of committing a theft, inflicted bodily injury or used force "upon another." N.J.S.A. 2C:15-1(a)(1). In State v. Gentry, 370 N.J. Super. 413, 416 (App. Div. 2004), we considered a jury inquiry, made during deliberations, about whether they could convict the defendant of robbery if one group of jurors thought force was used on a person inside the store while another group thought force was used on a different person in the vestibule and outside the store. The

A-2357-18

trial judge instructed that if all jurors found that force was used it didn't matter if they disagreed about which person was victimized by that force. Id. at 417. A majority of this court agreed with the trial judge and held that the jury was not required to agree on that fact, id. at 425, but the Supreme Court reversed, adopting Judge Coburn's dissent, id. at 426, in holding the jury was required to agree on the identity of the victim of the defendant's use of force, State v. Gentry, 183 N.J. 30, 33 (2005).

Unlike Gentry – where the operative facts occurred in a short span of time, in the same vicinity, and provided a clear choice for the jury between two possible events – prosecutions under N.J.S.A. 2C:24-4(a) present their own difficulties about unanimity. In Frisby, 174 N.J. at 587, the defendant was convicted of second-degree endangering under N.J.S.A. 2C:24-4(a), in connection with the death of her son. At trial, the State offered two theories: the defendant either inflicted the injuries, or she abandoned her son. Id. at 598. In recognizing the jury was asked to consider "[d]ifferent theories . . . based on different acts and entirely different evidence," the Court concluded that the absence of a specific unanimity charge allowed for "a non-unanimous patchwork verdict." Id. at 599. The Court concluded that, even in the absence of evidence that the jury reached a patchwork verdict, the argument that such evidence is

10

required "dices the notion of jury confusion referred to in our unanimity case law too finely." Ibid.

In State v. T.C., 347 N.J. Super. 219, 241 (App. Div. 2002), which preceded the Court's holding in Frisby,[4] we concluded that a specific unanimity charge was not required where the defendant was charged with abusing or neglecting her child, over the course of sixteen months, in three ways:  hitting him with a belt; restraining him through installation of an alarm on the door to his room; and withholding food.  We viewed these three categories of abuse as "conceptually similar" because they all "degrad[ed]" the child and were all "'parts of defendant's plan to abuse and torture'" the child.  Id. at 242-43.  We thus harmonized that conclusion with Parker, 124 N.J. at 639, where a teacher was charged with official misconduct based on allegations that:  "she had exhibited sexually explicit magazines to students"; "caused her students to make collages from photographs in those magazines"; and "discussed her own and others' sexual proclivities with her students."  T.C., 347 N.J. Super. at 242-43 (citing Parker, 124 N.J. at 631-32).  In Parker, the Court held there was no danger of a patchwork verdict in those circumstances.  124 N.J. at 641-42.

---

[4] The Frisby Court neither endorsed nor rejected T.C., holding only that it was factually distinguishable.  174 N.J. at 599-600.

Despite the many attempts to categorize cases in which specificity is required, the Supreme Court has recognized that, in the final analysis, juries must be unanimous on the "material facts" and "only common sense and intuition can define the specificity with which the jury must describe the defendant's conduct before it may convict." Parker, 124 N.J. at 634 (quoting Note, Right to Jury Unanimity on Material Fact Issues: United States v. Gipson, 91 Harv. L. Rev. 499, 502 (1977)). In adhering to both the letter and spirit of our unanimity jurisprudence, particularly the Court's decision in Parker and our own decision in T.C., we find it unlikely the jury was confused or that the absence of a more specific unanimity instruction was capable of producing an unjust result.[5]

---

[5] We note that defendant argued in the trial court – but not here – that the child-endangerment conviction should be set aside because it was inconsistent with the acquittals. To find an aggravated sexual assault, the jury was required to find beyond a reasonable doubt that defendant "commit[ted] an act of sexual penetration," N.J.S.A. 2C:14-2(a) (emphasis added), and to convict on the second-degree sexual assault charge, the jury was required to find that defendant "committed an act of sexual contact," N.J.S.A. 2C:14-2(b) (emphasis added). While the child-endangerment statute narrows the scope of potential offenders – those persons who "have a legal duty for the care of a child" – it casts a wider net as to the conduct that constitutes a violation: engaging "in sexual conduct which would impair or debauch the morals of the child." N.J.S.A. 2C:24-4(a)(1) (emphasis added). "Sexual conduct" is not defined but is understood as including those things prohibited by N.J.S.A. 2C:14-2(a) and N.J.S.A. 2C:14-2(b), and more. So, if the conduct prohibited by all three of these statutes were

A-2357-18

III

Defendant presents several arguments about the sentence imposed. He first argues that the judge should have sentenced him as a third-degree offender because the mitigating factor found – including mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), that defendant had no prior history of criminal activity and had lived a law-abiding life for a substantial period – substantially outweighed aggravating factors two, N.J.S.A. 2C:44-1(a)(2), which focuses on the particular victim's vulnerabilities, and nine, N.J.S.A. 2C:44-1(a)(9), the need for deterrence of the defendant and others.

---

presented as a Venn diagram, sexual penetration and sexual contact would constitute smaller circles completely enveloped by a larger sexual conduct circle. The evidence presented only aimed for those smaller circles. And the judge charged the jury that the State's evidence of "sexual conduct" was the same as the evidence offered to support the charges of aggravated sexual assault and sexual assault. The jury found that same evidence insufficient on the first two counts but sufficient to support the "sexual conduct" element of the child endangerment statute. This result invites a legitimate question: by what logic could the jury find the only evidence offered – evidence about sexual penetration and sexual contact – was not proven on the first counts but proven on the child-endangerment count? The answer, as the trial judge held in denying defendant's motion for acquittal, is simply that the verdict does not have to be logical, as we have held in precisely the same circumstances. See, e.g., State v. Overton, 357 N.J. Super. 387, 397 (App. Div. 2003). That holding was well supported by a long line of higher court decisions that recognize courts should not attempt to rationalize or set aside inconsistent verdicts so long as there is evidence in the record – as there was here – to support the conviction. United States v. Powell, 469 U.S. 57, 65 (1984); State v. Ingenito, 87 N.J. 204, 211-12 (1981).

A-2357-18

Defendant argues that in applying aggravating factor two, the judge engaged in "double-counting" because the conviction itself included that circumstance. See, e.g., State v. C.H., 264 N.J. Super. 112, 140 (App. Div. 1993) (finding error in applying aggravating factor two where the victim's age was what raised the sexual assault conviction to a first-degree offense); State v. Hodge, 207 N.J. Super. 363, 367 (App. Div. 1986) (finding that because the victim's age and defendant's parental relationship were elements of aggravated sexual assault, they could not support aggravating factors). To be sure, in sentencing defendant, the judge observed "[t]his was a young child," defendant was "her mother's paramour," twenty years older, and defendant was in a place of trust due to his relationship as "paramour" of the child's mother – facts that formed elements or parts of the elements of a child-endangerment conviction. But the judge also found that the child was "undergoing" difficulties arising from her place in a fragmented family, as well as the child's "lack of stability in her life, all of which made her all the more vulnerable to [defendant's] attacks." We are satisfied that the judge was entitled to find aggravating factor two here.

We also conclude that the judge was entitled to reject application of the other mitigating factors urged by defendant. Defendant argues that mitigating factors eight, nine, and eleven should have been applied. N.J.S.A. 2C:44-1(b)(8)

14

applies when a defendant's conduct "was the result of circumstances unlikely to recur"; the judge responded to this argument by finding that the circumstances did recur because, in the judge's view, the conduct for which defendant was convicted occurred on multiple occasions. The judge found as well that mitigating factor nine, N.J.S.A. 2C:44-1(b)(9) (defendant's "character and attitude . . . indicate . . . he is unlikely to commit another offense"), and eleven, N.J.S.A. 2C:44-1(b)(11) (imprisonment "would entail excessive hardship" to the defendant or dependents), did not apply. As to the former, the judge found there was nothing in the record to support its application and, while noting that imprisonment is always a hardship, the judge found no evidence of an excessive hardship on defendant or his dependents, since defendant's wife was working and supporting their child. We have been provided with no principled reason to reject the judge's findings on these mitigating factors.

In short, we conclude that the judge's findings and application of aggravating factors two and nine, and mitigating factor seven, were appropriate and supported by the record, and that the judge was entitled to conclude from his reasonable analysis of all the determined factors that the one mitigating factor did not substantially outweigh the aggravating factors.

Defendant's second and third arguments concern monetary aspects of the sentence imposed. He argues that the judge erred in imposing a $500 SCVTF penalty, under N.J.S.A. 2C:14-10(a)(2), without considering defendant's ability to pay or the nature of the offense and without providing a reason for his determination. Defendant also argues that the judge erred in imposing a CSO surcharge under N.J.S.A. 2C:43-3.7, because that statute permits a surcharge only when the defendant has been convicted of "an act of aggravated sexual assault or sexual assault" under N.J.S.A. 2C:14-2, or "aggravated criminal sexual contact or criminal sexual contact" under N.J.S.A. 2C:14-3.

The State agrees with defendant's correct positions on both these monetary assessments. Accordingly, we remand for further proceedings on the SCTVF assessment and for an amended judgment of conviction that does not contain a CSO surcharge under N.J.S.A. 2C:43-3.7.

* * *

Affirmed but remanded only for further proceedings regarding the sentence and the entry of an amended judgment of conviction. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2357-18