NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0435-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

FREDERICO BRUNO, a/k/a
FREDRICOT BRUNO,

 Defendant-Appellant.
_________________________

 Argued November 14, 2017 – Decided November 29, 2017

 Before Judges Fisher, Fasciale and Sumners.

 On appeal from Superior Court of New Jersey,
 Law Division, Hudson County, Indictment No.
 13-02-0400.

 Stephen P. Hunter, Assistant Deputy Public
 Defender, argued the cause for appellant
 (Joseph E. Krakora, Public Defender, attorney;
 Mr. Hunter, of counsel and on the brief).

 Kerry J. Salkin, Assistant Prosecutor, argued
 the cause for respondent (Esther Suarez,
 Hudson County Prosecutor, attorney; Ms.
 Salkin, of counsel and on the brief).

 Appellant filed a pro se supplemental brief.

PER CURIAM
 After a two-week jury trial involving the death of a three-

month-old child and a brutal attack of two adult victims, defendant

appeals from his convictions for aggravated manslaughter, felony

murder, burglary, attempted murder, aggravated assault, weapons

offenses, witness tampering, injured victim endangerment, and

child endangerment. We affirm.

 Defendant dated an individual (the girlfriend) and they had

a child (the child). The girlfriend, the child, and a friend (the

friend) lived together in an apartment. Defendant broke into the

apartment, brandished a meat cleaver, and slashed the friend's

face and arms. Defendant then brandished a knife and forced the

girlfriend into a bedroom, where he tried to remove the child from

her arms. She blacked out, and defendant resumed beating the

friend and stabbing her with the knife.

 A recording from a surveillance camera showed the girlfriend

falling out of the bedroom window and hitting the ground. A

witness testified that she saw defendant standing over the

girlfriend hitting her on the ground with a metal chair. When the

police arrived, they found the girlfriend and the child on the

ground. The child died in the emergency room.

 A grand jury indicted defendant with first-degree murder (the

child), N.J.S.A. 2C:11-3(a)(1) and (a)(2) (Count One); first-

degree felony murder (the child), N.J.S.A. 2C:11-3(a)(3) (Count

 2 A-0435-15T1
Two); second-degree burglary, N.J.S.A. 2C:18-2 (Count Three);

first-degree attempted murder (the girlfriend and the friend),

N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (Counts Four and Five);

second-degree aggravated assault (the girlfriend and the friend),

N.J.S.A. 2C:12-1(b)(1) (Counts Six and Seven); fourth-degree

unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (Counts

Eight, Ten and Twelve); third-degree possession of a weapon for

an unlawful purpose, N.J.S.A. 2C:39-4(d) (Counts Nine, Eleven and

Thirteen); second-degree witness tampering, N.J.S.A. 2C:28-5(a)

(Count Fourteen); third-degree endangering an injured victim,

N.J.S.A. 2C:12-1.2 (Counts Fifteen, Sixteen and Seventeen);

second-degree endangering the welfare of a child, N.J.S.A. 2C:24-

4(a) (Count Eighteen); and fourth-degree obstructing the

administration of justice, N.J.S.A. 2C:29-1 (Count Nineteen).

 On Count One, the jury found defendant guilty of first-degree

aggravated manslaughter of the child. The jury then found him

guilty on Counts Two through Eighteen. The judge imposed an

aggregate prison term of 113 years with seventy-six and one-half

years without parole eligibility.1

1
 The judge merged Counts One and Three into Two and sentenced
defendant to fifty years in prison subject to the No Early Release
Act (NERA), N.J.S.A. 2C:43-7.2. The judge merged Counts Six, Ten,
Eleven, Twelve, and Thirteen into Count Four and imposed a prison
term of twenty years subject to NERA, consecutive to Counts Two

 3 A-0435-15T1
 On appeal, defendant argues:

 POINT I
 THE REQUESTED SPECIFIC UNANIMITY INSTRUCTION
 SHOULD HAVE BEEN GIVEN BECAUSE THE STATE'S
 ALTERNATIVE TH[E]ORIES WERE NOT CONCEPTUALLY
 SIMILAR, BUT RATHER WERE CONTRADICTORY,
 RELYING ON DIFFERENT ACTS AND DIFFERENT
 EVIDENCE, THUS REASONABLY GIVING RISE TO THE
 DANGER OF A FRAGMENTED VERDICT. U.S. Const.
 [a]mend. XIV; N.J. Const. [a]rt. I, ¶ 9.

 POINT II
 IT IS CRUEL AND UNUSUAL PUNISHMENT THAT A
 FELONY MURDER CONVICTION LEADS TO A GREATER
 SENTENCE THAN AGGRAVATED MANSLAUGHTER BECAUSE
 IT IS GROSSLY DISPROPORTIONATE AND IT SERVES
 NO LEGITIMATE PENOLOGICAL OBJECTIVE TO PUNISH
 A NEGLIGENT HOMICIDE MORE SEVERELY THAN A
 RECKLESS HOMICIDE. U.S. Const. [a]mend VIII;
 N.J. Const. [a]rt. I, ¶ 12 (Not Raised Below).

 POINT III
 THE JUDGE FAILED TO ADDRESS THE REAL-TIME
 CONSEQUENCES OF THIS SENTENCE, WHICH ARE THE
 MOST SEVERE POSSIBLE UNDER THE LAW: LIFE

and Fifteen. The judge merged Counts Seven, Eight, and Nine into
Count Five and imposed a twenty-year prison term subject to NERA,
consecutive to Counts Two, Four, Five, Fourteen, Fifteen, and
Sixteen. On Count Fourteen, the judge sentenced defendant to
seven years in prison, consecutive to Counts Two, Four, Fifteen,
and Sixteen. (On Count Fourteen, the judgment of conviction (JOC)
and sentencing transcript conflict. The JOC refers to Count
Fourteen as Count Seven, and fails to include Count Eighteen as a
consecutive sentence. In the sentencing transcript, the judge
properly referred to defendant's conviction on Count Fourteen, and
he included Count Eighteen as part of the consecutive sentence.)
On Count Fifteen, defendant received a five-year prison term,
consecutive to Count Two. On Count Seventeen, the judge imposed
a four-year prison term, consecutive to Counts Two, Four, Five,
Fourteen, Fifteen, and Sixteen. And on Count Eighteen, the judge
imposed a ten-year prison term, concurrent to Counts Two, Four,
Five, Fourteen, Fifteen, Sixteen, and Seventeen.

 4 A-0435-15T1
 IMPRISONMENT WITHOUT THE POSSIBILITY OF
 PAROLE; THE OVERALL SENTENCE WAS EXCESSIVE.
 U.S. Const. [a]mend. VIII; N.J. Const. [a]rt.
 I, ¶¶ 1, 12.

In defendant's pro se supplemental brief, he raises one additional

argument, which we have renumbered:

 POINT [IV]
 THE COURT ERRED FOR NOT EXCLUDING JUROR
 [NUMBER EIGHT] . . . AFTER SHE OBSERVED THE
 DEFENDANT HANDCUFFED[,] WHICH VIOLATED
 DEFENDANT[']S SIXTH AMENDMENT RIGHT TO A FAIR
 TRIAL.

 We reject defendant's assertion that a special unanimity

instruction was required in this case. To be sure, a jury verdict

must be unanimous to convict a defendant of a crime. State v.

Parker, 124 N.J. 628, 633 (1991), cert. denied, 503 U.S. 939, 112

S. Ct. 1483, 117 L. Ed. 2d 625 (1992); see also R. 1:8-9. "[T]he

unanimous jury requirement impresses on the trier of fact the

necessity of reaching a subjective state of certitude on the facts

in issue." Parker, supra, 124 N.J. at 633 (quoting United States

v. Gipson, 553 F.2d 453, 457 (5th Cir. 1977)).

 The consensus of a jury requires "substantial agreement as

to just what a defendant did." State v. Frisby, 174 N.J. 583, 596

(2002) (quoting Gipson, supra, 553 F.2d at 457). In most

instances, a general unanimity instruction will suffice without

any special additional instructions. Id. at 597. Such a special

instruction may only be necessary in situations where:

 5 A-0435-15T1
 (1) a single crime could be proven by
 different theories supported by different
 evidence, and there is a reasonable likelihood
 that all jurors will not unanimously agree
 that the defendant's guilt was proven by the
 same theory; (2) the underlying facts are very
 complex; (3) the allegations of one count are
 either contradictory or marginally related to
 each other; (4) the indictment and proof at
 trial varies; or (5) there is strong evidence
 of jury confusion.

 [State v. Cagno, 211 N.J. 488, 517 (2012)
 (citing Frisby, supra, 174 N.J. at 597), cert.
 denied, 568 U.S. 1104, 133 S. Ct. 877, 184 L.
 Ed. 2d 687 (2013).]

As the Court explained in Parker, when a series of alleged criminal

acts committed by a defendant involves acts that are "conceptually

similar," no special jury instruction on unanimity is required to

segregate those acts. Parker, supra, 124 N.J. at 639.

 Defendant argues the trial judge erred by denying his request

for specific unanimity instructions to the jury. He contends that

the State presented two theories for the murder of the child:

defendant physically forced the girlfriend out of the window while

she was holding the child; or his actions inside the apartment

made her fear for her own life and the child's life, and therefore

she jumped out of the window while holding the child. Defendant

maintains that these theories are dissimilar factually thereby

warranting the specific instruction.

 6 A-0435-15T1
 The judge rejected defendant's request for the specific

unanimity jury charge by considering the State's theories and the

applicable law. In rejecting the request and applying Parker, the

judge found that

 [t]he State's theory . . . as to why [the
 girlfriend] and [the child] went out [of] the
 window has consistently been focused on the
 conduct of the defendant in the apartment.
 Specifically, that it was defendant's direct
 physical conduct based on his assault of [the
 girlfriend] and the [friend] which caused [the
 girlfriend] to go out [of] the window.

 Here, defendant is alleged to have been in the
 process of assaulting [the girlfriend] when
 she exited the apartment window with [the
 child] in her arms. Both of the State's
 theories rely on its evidence that [the
 child's] death was a result of defendant's
 assault in the apartment.

 . . . .

 The State's two theories . . . are based on
 defendant's conduct within the apartment.
 Although jurors may disagree as to how [the
 girlfriend] went out [of] the window, all the
 jurors would still be unanimous in that [the
 girlfriend] exited the window as a direct
 consequence of defendant's conduct[,] which
 must be established beyond a reasonable doubt.

 Therefore, I do not find that a special
 interrogatory is required, and that I will
 instruct the jurors that they may find the
 defendant guilty provided [that] the State
 proves causation beyond a reasonable doubt.
 Specifically, the jury will be instructed that
 [it] may find either that [the girlfriend]
 went out of the window as a result of the
 physical contact of [defendant] or as a result

 7 A-0435-15T1
 of her exiting to escape the assault that was
 occurring.

Thus, as the judge correctly found, under either theory,

defendant's physical conduct toward the girlfriend forced her out

of the window. Similar to the Court's decision in Parker,

"[b]ecause the acts alleged were conceptually similar, there was

no reason to give a specific unanimity charge." Parker, supra,

124 N.J. at 639. "[T]here was no genuine possibility of jury

confusion about its responsibility" to unanimously find

defendant's conduct inside the apartment caused the girlfriend to

exit the window. Id. at 642.

 Defendant contends for the first time that his prison sentence

for felony murder amounts to cruel and unusual punishment.

Defendant equates felony murder with a crime of negligent homicide.

Defendant argues therefore that his sentence for felony murder is

grossly disproportionate and serves no legitimate penological

objective.

 N.J.S.A. 2C:11-3(b)(1) requires the imposition of a minimum

period of thirty years of parole ineligibility for a felony murder

conviction. We have previously held that this minimum sentence

does not violate the Federal or State constitutions. State v.

Johnson, 206 N.J. Super. 341, 349 (App. Div. 1985), certif. denied,

104 N.J. 382 (1986).

 8 A-0435-15T1
 It is firmly settled that the broad power to
 declare what shall constitute criminal conduct
 and to fix both the maximum and minimum terms
 of imprisonment for such conduct has been
 committed by the people of this State to the
 legislative, rather than to the judicial
 branch of government. State v. Hampton, 61
 N.J. 250, 273 (1972). See also State v. Smith,
 58 N.J. 202, 211 (1971). The fact that our
 Legislature has provided a more severe
 punishment for criminal acts than the courts
 approve is no grounds for judicial
 interference, unless a constitutional or other
 prohibition against such punishment has been
 violated. In making this determination, our
 Supreme Court in State v. Hampton, supra,
 expressed the view that "courts consider
 whether the nature of the criticized
 punishment is such as to shock the general
 conscience and to violate principles of
 fundamental fairness; whether comparison
 shows the punishment to be grossly
 disproportionate to the offense, and whether
 the punishment goes beyond what is necessary
 to accomplish any legitimate penal aim." 61
 N.J. at 273-[]74. Thus, "[a]bsent such a
 showing[,] the judiciary must respect the
 legislative will." Id. at 274.

 [Johnson, supra, 206 N.J. Super. at 343
 (second alteration in original).]

 Felony murder is an absolute liability crime because a

defendant need not have contemplated or intended the victim's

death. State v. Martin, 119 N.J. 2, 20 (1990); see also State v.

McClain, 263 N.J. Super. 488, 491 (App. Div.), certif. denied, 134

N.J. 477 (1993); State v. Darby, 200 N.J. Super. 327, 331 (App.

Div. 1984), certif. denied, 101 N.J. 226 (1985). The only mental

state required for felony murder is the specific mental culpability

 9 A-0435-15T1
required to commit one of the particular underlying felonies

specified in N.J.S.A. 2C:11-3(a)(3). See Darby, supra, 200 N.J.

Super. at 331. Thus, any comparison to the sentences imposed for

a felony murder conviction and what defendant has labeled as

"negligent homicide" is misplaced.

 We reject defendant's contention that the judge failed to

address the "real-time" consequences of the No Early Release Act

(NERA), N.J.S.A. 2C:43-7.2, component to his sentence. Defendant

argues that his sentence is otherwise excessive. We conclude that

defendant's sentencing arguments are "without sufficient merit to

warrant discussion in a written opinion." R. 2:11-3(e)(2). We

add the following brief remarks.

 Our review of sentencing determinations is limited. State

v. Roth, 95 N.J. 334, 364-65 (1984). We will not ordinarily

disturb a sentence imposed which does not shock the judicial

conscience. State v. O'Donnell, 117 N.J. 210, 215-16 (1989). In

sentencing, the judge "first must identify any relevant

aggravating and mitigating factors set forth in N.J.S.A. 2C:44-

1(a) and (b) that apply to the case." State v. Case, 220 N.J. 49,

64 (2014). The judge must then "determine which factors are

supported by a preponderance of [the] evidence, balance the

relevant factors, and explain how [he or she] arrives at the

appropriate sentence." O'Donnell, supra, 117 N.J. at 215. We are

 10 A-0435-15T1
"bound to affirm a sentence, even if [we] would have arrived at a

different result, as long as the trial court properly identifie[d]

and balance[d] aggravating and mitigating factors that [were]

supported by competent credible evidence in the record." Ibid.

 In reviewing a sentence subject to NERA, "we must . . . be

mindful of the real-time consequences of NERA and the role that

it customarily plays in the fashioning of an appropriate sentence."

State v. Marinez, 370 N.J. Super. 49, 58 (App. Div.), certif.

denied, 182 N.J. 142 (2004). In order to do that, the reviewing

court must "consider the judge's evaluation of the aggravating and

mitigating factors in that light." Ibid. During defendant's

sentencing, the judge gave a detailed analysis of the aggravating

and mitigating factors, how they applied to each count, and the

facts that supported his decision.

 Consequently, there is no reason to second-guess the trial

court's application of the sentencing factors, nor any reason to

conclude that the sentence "shocks the judicial conscience." Roth,

supra, 95 N.J. at 364; see also State v. Bieniek, 200 N.J. 601,

612 (2010) (reiterating that appellate courts must accord

deference to trial judges in sentencing decisions).

 Finally, defendant argues the judge erred by failing to remove

juror number eight, who inadvertently saw defendant enter a room

 11 A-0435-15T1
in handcuffs. Defendant contends that he therefore received an

unfair trial.

 Under the Sixth Amendment of the United States Constitution

and Article I, paragraph 10 of the New Jersey Constitution "the

right of a defendant to be tried by an impartial jury is of

exceptional significance." State v. Williams, 93 N.J. 39, 60

(1983). The securing and preservation of an impartial jury goes

to the very essence of a fair trial. See Sheppard v. Maxwell, 384

U.S. 333, 362-63, 86 S. Ct. 1507, 1522, 16 L. Ed. 2d 600, 620

(1966). It is well established "that a defendant is entitled to

a jury that is free of outside influences and will decide the case

according to the evidence and arguments presented in court in the

course of the criminal trial itself." Williams, supra, 93 N.J.

at 60.

 Where it appears that outside influences may have influenced

jurors, "the trial judge must take action to assure that the jurors

have not become prejudiced as a result of facts which 'could have

a tendency to influence the jury in arriving at its verdict in a

manner inconsistent with the legal proofs and the court's charge.'"

State v. Bisaccia, 319 N.J. Super. 1, 12 (App. Div. 1999) (quoting

State v. Scherzer, 301 N.J. Super. 363, 486 (App. Div.), certif.

denied, 151 N.J. 466 (1997)). The test is not whether the

irregularity actually influenced the jurors but "whether it had

 12 A-0435-15T1
the capacity of doing so." Panko v. Flintkote Co., 7 N.J. 55, 61

(1951). "[W]here . . . there is the possibility of actual juror

taint or exposure to extraneous influences (including jury

misconduct and comments made to jurors by outside sources), the

judge must voir dire that juror and, in appropriate circumstances,

the remaining jurors." Bisaccia, supra, 319 N.J. Super. at 13

(citation omitted). In Scherzer, supra, 301 N.J. Super. at 487-

88 (citation omitted), we summarized the trial judge's obligation

stating:

 The thrust of the New Jersey and federal cases
 on mid-trial allegations of jury misconduct
 is that the trial judge must make a probing
 inquiry into the possible prejudice caused by
 any jury irregularity, relying on his or her
 own objective evaluation of the potential for
 prejudice rather than on the jurors'
 subjective evaluation of their own
 impartiality. Although the trial judge has
 discretion in the way to investigate
 allegations of jury misconduct, an adequate
 inquiry on the record is necessary for the
 purposes of appellate review.

The record reveals that the judge engaged in proper inquiries when

faced with apparent juror taint, and in his sound discretion

determined that there was not any prejudice. Taking into account

"[a] decision on the potential bias of a prospective juror is

addressed to the sound discretion of the trial judge," State v.

Carroll, 256 N.J. Super. 575, 599 (App. Div.), certif. denied, 130

N.J. 18 (1992); see also State v. Singletary, 80 N.J. 55, 62-63

 13 A-0435-15T1
(1979), the judge did not abuse his discretion by allowing the

trial to proceed without removing the juror.

 After considering the record, oral argument, and the briefs,

we conclude that defendant's remaining arguments are "without

sufficient merit to warrant discussion in a written opinion." R.

2:11-3(e)(2).

 Affirmed.

 14 A-0435-15T1